GUARANTY TRUST COMPANY OF NEW YORK, as Trustee, Appellant and Respondent, *v.* NEW YORK AND QUEENS COUNTY RAILWAY COMPANY et al., Respondents, and BANKERS TRUST COMPANY, as Trustee, Respondent and Appellant.

(Argued January 13, 1930; decided March 18, 1930.)

*Alfred T. Davison, Charles E. Hotchkiss, Martin A. Schenck* and *H. C. McCollom* for plaintiff, appellant and respondent.   The Steinway mortgage covers all additions and accessions necessary for use in connection with the mortgaged property, whether acquired by the Steinway Company or by the New York and Queens County Railway Company.   (*Galveston R. R. Co.* v. *Cowdrey,* 11 Wall. 459; *Compton* v. *Jesup,* 68 Fed. Rep. 263; *Commercial Trust Co.* v. *Chattanooga R. & L. Co.,* 281 Fed. Rep. 856.)   The Purvis street substation is covered by the Steinway mortgage.   (*Central Trust Co.* v. *Kneeland,* 138 U. S. 414; *Knevals* v. *Florida Central & P. R. Co.,* 66 Fed. Rep. 224; *Seymour* v. *Canandaigua & N. F. R. R. Co.,* 25 Barb. 284; *Pennock* v. *Coe,* 23 How. 117; *People's Trust Co.* v. *Schenck,* 195 N. Y. 398; *Hamlin* v. *Jerrard,* 72 Me. 62; *National Bank* v. *Wilmington, N. C. & S. Ry. Co.,* 9 Del. Ch. 258; *Drake* v. *N. Y. Suburban Water Co.,* 26 App. Div. 499; 36 App. Div. 275; *Atlantic Trust Co.* v. *N. Y. Suburban Water Co.,* 75 App. Div. 354; *People ex rel. Huff* v. *Miller,* 118 Misc. Rep. 681; 207 App. Div. 861; *Marfield* v. *Traction Co.,* 111 Ohio St. 139; *Compton* v. *Jesup,* 68 Fed. Rep. 263; *Ithaca Trust Co.* v. *Ithaca Traction Corp.,* 248 N. Y. 322; *Commercial Trust Co.* v. *Chattanooga Ry. & L. Co.,* 281 Fed. Rep. 856; *Wade* v. *Chicago R. R. Co.,* 149 U. S. 327; *Citizens' Savings & Trust Co.* v. *Cincinnati & Dayton Traction Co.,* 106 Ohio St. 577; *Pintsch Compressing Co.* v. *Buffalo Gas Co.,* 280 Fed. Rep. 830; *Phœnix Iron Works* v. *New York Security & Trust Co.,* 83 Fed. Rep. 757; *Harris* v. *Youngstown Bridge Co.,* 90 Fed. Rep. 322; *Front Street Cable Ry. Co.* v. *Drake,* 84 Fed. Rep. 257.)   The Wood-

side car barn is covered by the Steinway mortgage. (*Central Trust Co.* v. *Kneeland*, 138 U. S. 414; *Knevals* v. *Florida Central & P. R. Co.*, 66 Fed. Rep. 224; *Seymour* v. *Canandaigua & N. F. R. R. Co.*, 25 Barb. 284; *Stevens* v. *Watson*, 4 Abb. Ct. App. Dec. 302; *People's Trust Co.* v. *Schenck*, 195 N. Y. 398; *Brooklyn Heights R. R. Co.* v. *City of Brooklyn*, 152 N. Y. 244; *Brooklyn Heights R. R. Co.* v. *Steers*, 213 N. Y. 76; *City of New York* v. *Brooklyn City R. R. Co.*, 232 N. Y. 463; *Matter of Westchester Electric R. R. Co.* v. *City of Mount Vernon*, 206 App. Div. 708; 237 N. Y. 199; *Union Ry. Co.* v. *City of New York*, 238 N. Y. 289.) The Steinway mortgage covers the steel cars acquired by the New York and Queens County Railway Company. (*People's Trust Co.* v. *Schenck*, 195 N. Y. 398; *Guaranty Trust Co.* v. *Metropolitan Street Ry. Co.*, 166 Fed. Rep. 569; *Commercial Trust Co.* v. *Chattanooga Ry. & L. Co.*, 281 Fed. Rep. 856; *National Bank* v. *Wilmington, N. C. & S. Ry. Co.*, 9 Del. Ch. 258; *Shaw* v. *Bill*, 95 U. S. 10; *Louisville Trust Co.* v. *Cincinnati Inclined-Plane Ry. Co.*, 91 Fed. Rep. 699; *American Sugar Ref. Co.* v. *Fancher*, 145 N. Y. 552; *Matter of Hicks*, 170 N. Y. 195.)

*Charles F. Kingsley, Arthur G. Peacock* and *James L. Quackenbush* for New York and Queens County Railway Company, respondent. The lien of a mortgage containing an after-acquired property clause executed by a railroad corporation which with other railroad corporations is subsequently merged into a possessor corporation, does not extend to the properties surrendered by the other companies nor to those purchased by the possessor corporation with its own funds and employed in the general operation of the consolidated lines. (*Metropolitan Trust Co.* v. *Chicago & E. I. R. Co.*, 253 Fed. Rep. 868; 248 U. S. 586; *Trust Co.* v. *City of Rhinelander*, 182 Fed. Rep. 64; *Pullman Car Co.* v. *Missouri Pacific Co.*, 115 U. S. 587; *Chicago, St. Paul & K. C. Ry. Co.* v.

*Kansas City, St. J. & C. B. R. Co.*, 38 Fed. Rep. 58; *Mississippi Valley Trust Co.* v. *Southern Trust Co.*, 261 Fed. Rep. 765; *Alexandria Ry. Trustees* v. *Graham*, 31 Grat. 769; *Gibert* v. *Washington, etc., R. R. Co.*, 33 Grat. 586; *Compton* v. *Jesup*, 68 Fed. Rep. 263; *Hinchman* v. *Point Defiance Ry. Co.*, 14 Wash. 349; *New York Security & Trust Co.* v. *Louisville, etc., R. Co.*, 102 Fed. Rep. 382; *Central Trust Co.* v. *Pittsburg, S. & N. R. R. Co.*, 223 N. Y. 347; *Susquehanna T. & S. Deposit Co.* v. *United T. & T. Co.*, 6 Fed. Rep. [2d] 179; *Irvine* v. *New York Edison Co.*, 207 N. Y. 425; *Syracuse Lighting Co.* v. *Maryland Casualty Co.*, 226 N. Y. 25; *Citizens Savings & Trust Co.* v. *Cincinnati & Dayton Traction Co.*, 106 Ohio St. 577.) Purvis street substation was acquired by the New York and Queens County Railway Company for its own corporate purposes, paid for with its own money, and the lien of the Steinway mortgage does not and cannot attach to it. (*People ex rel. Huff* v. *Miller*, 118 Misc. 682; 202 App. Div. 861; *Metropolitan Trust Co.* v. *Chicago & E. L. R. R. Co.*, 253 Fed. Rep. 868.) The Woodside barn is not within the lien of the Steinway mortgage; the Steinway Company never had title to the site; the building was erected with money furnished by the Philadelphia Syndicate and the New York and Queens County Railway Company; neither the Steinway Company nor its predecessor had a franchise to lay tracks to the barn which is located outside the boundary of the former Long Island City. (*Matter of Brooklyn, Queens County & Suburban Railroad Co.*, 185 N. Y. 171; *First Construction Co.* v. *State of New York*, 221 N. Y. 295; *Matter of Westchester Electric Railroad Co.*, 237 N. Y. 199.)

*James H. McIntosh* for Bankers Trust Company, respondent and appellant. The plaintiff's mortgage covers only the property the mortgagor owned at the time of the merger. (*N. Y. Security & Trust Co.* v.

*L. E. & L. C. R. Co.*, 102 Fed. Rep. 382; *Ithaca Trust Co.* v. *Ithaca Traction Corp.*, 248 N. Y. 322.) The lien of the defendant's mortgage attached instantly to the interest of the defendant New York and Queens County Railway Company in all the property it owned at the time it made the mortgage and in all the property it thereafter acquired. (*New York Security Co.* v. *Saratoga Gas Co.*, 88 Hun, 569; *Galveston, etc., R. R. Co.* v. *Cowdrey*, 11 Wall. 459; *New Orleans, etc., R. R. Co.* v. *Mellen*, 12 Wall. 362; *Toledo, etc., R. R. Co.* v. *Hamilton*, 134 U. S. 296; *Bear Lake Irrigation Co.* v. *Garland*, 164 U. S. 1; *Harris* v. *Youngstown Bridge Co.*, 90 Fed. Rep. 322; *Washington Trust Co.* v. *Morse Iron Works*, 106 App. Div. 195; *Bommer* v. *American Spiral*, 81 N. Y. 468; *Seymour* v. *S. F. C. A.*, 144 N. Y. 333; *Rogers* v. *N. Y. & T. L. Co.*, 134 N. Y. 197; *Morgan* v. *Bon Bon Co.*, 222 N. Y. 22; *Sanders* v. *Barnaby*, 166 App. Div. 274; *Whitney* v. *Wyman*, 101 U. S. 392.) The defendant's lien is a matter of contract, not of equity, and, having once attached, remains a lien until the mortgage debt is paid. (*Pennsylvania Steel Co.* v. *N. Y. City Ry. Co.*, 165 Fed. Rep. 472; *American Brake Shoe & Foundry Co.* v. *N. Y. Rys. Co.*, 293 Fed. Rep. 612; Pomeroy's Equity Jurisprudence, §§ 43–54; *McClure* v. *Leaycraft*, 183 N. Y. 36.) The plaintiff's mortgage is not a lien prior to the lien of this defendant on the office building and car house at Nos. 7 and 9 Borden avenue, nor a joint lien with this defendant on the tracks that surround it. (*Tarbel* v. *Bradley*, 7 Abb. N. C. 273; 73 N. Y. 599; *Fosdick* v. *Schall*, 99 U. S. 235; *Meyer* v. *Western Car Co.*, 102 U. S. 1; *Wright* v. *Ky. & Great Eastern Ry. Co.*, 117 U. S. 72; *Harris* v. *Youngstown Bridge Co.*, 90 Fed. Rep. 322; *Railway Steel Spring Co.* v. *Chicago & East. Ill. R. Co.*, 246 Fed. Rep. 338.) Where a mortgage contains an after-acquired property clause and the mortgagor's property thereafter becomes a constituent part of a larger system either by merger, consolidation, sale or purchase,

the after-acquired clause does not attach to the properties contributed by the other constituent companies or to the property acquired by the new corporation. (*Central Trust Co.* v. *Pittsburgh, S. & N. R. R. Co.*, 223 N. Y. 347; *Hinchman* v. *Point Defiance Ry. Co.*, 14 Wash. 349; *New York Security & Trust Co.* v. *Louisville, etc., R. Co.*, 102 Fed. Rep. 382; *Metropolitan Trust Co.* v. *Chicago & Eastern Illinois R. R. Co.*, 253 Fed. Rep. 868; *Miss. Valley Trust Co.* v. *Southern Trust Co.*, 261 Fed. Rep. 765; *Commercial Trust Co.* v. *Chattanooga Ry. & Light Co.*, 281 Fed. Rep. 856; *Citizens Savings & Trust Co.* v. *Cincinnati & D. Traction Co.*, 106 Ohio St. 577; *Pullman Palace Car Co.* v. *Missouri Pac. Ry. Co.*, 115 U. S. 587; *Chicago, etc., Ry. Co.* v. *Kansas City Ry. Co.*, 38 Fed. Rep. 58; *Harris* v. *Youngstown Bridge Co.*, 90 Fed. Rep. 322; *Trust Co. of America* v. *City of Rhinelander*, 182 Fed. Rep. 64.)

CARDOZO, Ch. J. The action is one for the foreclosure of a mortgage given in 1892 by the Steinway Railway Company to a trustee for bondholders.

The mortgagor owned and operated a street railroad in Long Island City, and the subject-matter of the mortgage was the road so owned and operated, its rolling stock and equipment, and any after-acquired property necessary or convenient for use in connection therewith.

The defendant New York and Queens County Railway Company was incorporated in 1896 to acquire by merger the Steinway line as well as other lines in neighboring communities, *i. e.*, in Newtown, Flushing and College Point.

Having purchased the entire capital stock of the Steinway Railway Company, it filed a certificate of merger under section 58 of the Stock Corporation Law then in force (L. 1896, ch. 932; Cons. Laws, ch. 59), with the result that it became the owner of the franchise and property of the corporation so merged. It did not, however,

either by covenant or by statute, assume the obligations or liabilities of the merged corporation, nor was it answerable therefor (*Irvine* v. *New York Edison Co.*, 207 N. Y. 425; *Syracuse Lighting Co.* v. *Maryland Cas. Co.*, 226 N. Y. 25).

The shares of the Newtown Railway Company which operated a line in Newtown, the shares of the Riker Avenue and Sanford's Point Company and the shares of the Flushing and College Point Company, as well as the property and franchises of the Long Island and Newtown Railroad Company, were acquired at or about the same time.

The New York and Queens County Railway thereupon executed its first consolidated mortgage to a trustee, subject to the underlying mortgages on the constituent lines, the new mortgage covering the property then owned by the mortgagor or thereafter to be acquired.

The present controversy is one between the trustee of the Steinway mortgage on the one side, and on the other side the maker and the trustee of the consolidated mortgage, the former contending that certain after-acquired properties are subject to the lien of the Steinway mortgage, and the others that they are free from that lien and subject only to the lien of the consolidated mortgage. The chief properties so acquired are the Purvis Street sub-station, the Woodside car barns and contiguous tracks, the Borden Avenue office building, and rolling stock, tools, supplies and miscellaneous equipment.

The essential facts as to these acquisitions are the following:

1. In 1906, ten years after the merger, the merging corporation acquired a new parcel of land at Purvis street, in what had formerly been Long Island City, and built a new power house thereon, which was completed in 1908, for the use of all the lines. Until then power had been supplied from the Mills Street power house which belonged to the Steinway line. Sixty-three

per cent of the current output of the new station is required for the Steinway cars, thirty-seven per cent for other cars. The trial court and the Appellate Division have held that the new station is subject only to the lien of the consolidated mortgage. The plaintiff insists that there is a prior lien in favor of the Steinway mortgage bondholders either upon the station as a whole, or upon an undivided sixty-three per cent interest therein, the percentage being determined by the proportion of the use.

2. In 1896 the merging corporation acquired a new parcel in what was formerly known as Woodside, Long Island, for a new car barn to serve the unified lines. A new barn was built upon the land in 1897. Till then the Steinway company had maintained a separate barn in which it kept its own cars. It also used the barn as a repair shop, though the shop and its equipment were already out of date. By the decision of the courts below the Woodside barn and connecting tracks have been held to be security for the consolidated mortgage. The plaintiff insists that they should be made to feed the Steinway mortgage, at least to the extent of 50.8%, a percentage determined by the proportion of the use.

3. Land and building described as 7 and 9 Borden avenue were acquired in 1896 for use as an office, and title thereto was taken in the name of the Steinway company. The courts below have held that the result was an accession to the property that was subject to the Steinway lien. The trustee under the consolidated mortgage insists that its own bondholders should have the protection of the new security.

4. Railroad cars, bought by the merging corporation, have been held by the Appellate Division to be subject for the most part to the consolidated mortgage only, the evidence being insufficient except as to nineteen cars to make out an allocation to specific lines. On the other hand, miscellaneous equipment, tools and supplies have

been apportioned among the underlying mortgages in percentages corresponding to the proportionate use.

A mortgage of property to be acquired in the future is not a present lien at law (*Rochester Distilling Co.* v. *Rasey*, 142 N. Y. 570). It is, however, equivalent to a covenant to give a lien, and as such, when the property comes into existence, may be specifically enforced in equity (*Kribbs* v. *Alford*, 120 N. Y. 519). In the absence of intervening equities forbidding such a use, the property, when acquired, is deemed to feed the mortgage, as if in existence at the beginning (*Holroyd* v. *Marshall*, 10 H.L. Cas. 191; *Zartman* v. *First Nat. Bank*, 189 N. Y. 267). There is need to distinguish, however, between the enforcement of the covenant in respect of property thereafter acquired by the mortgagor itself, and property thereafter acquired by a successor or a purchaser. Property thereafter acquired by the mortgagor itself will be subject to the mortgage, if within the description of the covenant, however alien it may be in quality or function to the property presently subjected to the lien (*People's Trust Co.* v. *Schenck*, 195 N. Y. 398; *Ithaca Trust Co.* v. *Ithaca Traction Corp.*, 248 N. Y. 322). It is otherwise in respect of purchasers, and even at times successors. To spread the lien of the mortgage to property acquired by these, there must be an independent ground of duty. This may have its origin in a statute or in a covenant of assumption or in the principles of estoppel or accession, or in some other kindred equity (*Trust Co.* v. *City of Rhinelander*, 182 Fed. Rep. 64, 69; *Metropolitan Trust Co.* v. *Chicago, etc., R. R. Co.*, 253 Fed. Rep. 868; certiorari denied, 248 U. S. 586). In the case at hand the covenant as to acquisitions is sweeping in its terms, embracing anything " necessary or convenient " for the operation of the road. By its terms also it is to apply to such property when acquired by the mortgagor's " successors " as well as by the mortgagor itself. The problem to be solved is the effect to be given to a covenant so phrased in its applica-

tion to a railroad succeeding through merger to the franchise of another.

At the outset there is need to consider the meaning of the term " successors." A covenant by a corporation for itself and " its successors " is like a covenant by a natural person for himself, " his executors and administrators." It adds nothing of substance, for it is the expression of an obligation that if not stated would be implied (*Matter of Buccini* v. *Paterno Constr. Co.*, 253 N. Y. 270; *Kernochan* v. *Murray*, 111 N. Y. 306, 308; *Chancellor* v. *Bell*, 45 N. J. Eq. 538, 541; *Overseers, etc.*, v. *Sears*, 22 Pick. 122, 126; *Cumberland B. & L. Assn.* v. *Aramingo M. E. Church*, 13 Phila. [Pa.] 171, 172; 8 Halsbury Laws of England, pp. 371, 372). In like manner, a covenant by a corporation extending the lien of a mortgage to property thereafter acquired by its " successors " is not an attempt to impose the continuing burden of the covenant in respect of future acquisitions upon a new corporation that is merely a purchaser. It is directed to future acquisitions by those successor corporations that preserve or continue the corporate *persona* (*Mississippi Valley Trust Co.* v. *Southern Trust Co.*, 261 Fed. Rep. 765), much as the heir in the Roman law continued the *persona* of the ancestor (Holmes, The Common Law, p. 343), and in our own system the executor continues for the most part as universal successor the *persona* of a testator (Holmes, The Common Law, pp. 344, 345, 350; Holmes, Executors, 9 Harv. L. Rev. 42; Collected Legal Papers, pp. 141, 143; Holdsworth, History of English Law, vol. 3, pp. 573, 583). How far the covenant is effective even then as to land or other property subsequently acquired must depend upon the statutes that regulate dissolution or succession.

At the present time in New York a possessor corporation, *i. e.*, one which merges another through the purchase of its shares of stock, " shall be deemed to have assumed

all the liabilities and obligations of the merged corporation and shall be liable in the same manner as if it had itself incurred such liabilities and obligations " (Stock Corp. Law, § 85, subd. 2). The same assumption of obligations and liabilities results where there has been a consolidation of two or more corporations as distinguished from a merger (§§ 86, 90). But in 1896, at the time of the absorption of the Steinway line, the consequences flowing from merger were sharply differentiated from those flowing from consolidation. The subject was fully considered in *Irvine* v. *New York Edison Co.* (*supra*). The merged corporation was not dissolved, but continued to exist in so far as its existence was necessary for the protection of its creditors. Its property was subject at their pursuit to execution or sequestration in appropriate proceedings, equitable or legal. On the other hand, the new or possessor corporation was not charged with any duty to the creditors except to the extent of holding the property thus acquired in subjection to their claims. It did not gather unto itself and thereafter embody and continue an existing corporate life. It was not bound by the covenants of the merged corporation, nor did it assume them as its own. It was not in the proper sense of the term a successor, but rather an assignee or a purchaser. All this was settled law. If in the case at hand the mortgagor's covenant is enforcible against the merging corporation in respect of property acquired after the merger, it must be by force of some principle of estoppel or of accession, or some other kindred equity. It cannot be by force of any duty of assumption, contractual or statutory.

An attempt is made to relate the obligation to the principle of estoppel. Cases such as *Galveston R. R. Co.* v. *Cowdrey* (11 Wall. [U. S.] 459, 481); *Wade* v. *Chicago, etc., R. R. Co.* (149 U. S. 327, 342) and *Compton* v. *Jesup* (68 Fed. Rep. 263) are cited to that end. There is, however, a distinction. In all those cases the property had already

been acquired by the mortgagor, or by a corporation assuming the obligations of the mortgagor, before the ownership had passed to the successor or the buyer. There was thus estoppel to repudiate an equitable duty subsisting at the moment of the transfer. Thus, in *Galveston R. R. Co.* v. *Cowdrey* (*supra*) a railroad company of Texas made four successive mortgages with clauses in each covering after-acquired property. Thereafter it bought iron which it used for its tracks, and attempted to give to one Pulsford a special lien thereon (pp. 464, 465). All that the court held was that the new mortgage was ineffective to displace the prior equitable lien on property then acquired. " Mr. Pulsford, as holder of the fourth mortgage, is an assignee of the railroad company, claiming under it, with full notice of the other mortgages. He is in privity with the company, and is bound by the estoppel " (pp. 481, 482). So, in *Wade* v. *Chicago, etc., R. R. Co.* (*supra*) a mortgage covered a railroad right of way, its additions and extensions. The line as first laid out was south of Litchfield. Thereafter a right of way was acquired north of Litchfield, but title was taken in the name of a construction company for the use of the mortgagor as equitable owner (p. 341). Still later the road as a whole was conveyed to a reorganized corporation which took with notice of existing equities. The court held that there was an estoppel to repudiate the underlying mortgage as a valid and subsisting lien upon the equitable interests previously acquired. " The ' after-acquired property clause ' of a mortgage will cover not only legal acquisitions, but all equitable rights and interests subsequently acquired by or for the mortgagor " (p. 341), which is a very different thing from saying that it will acquire rights and interests subsequently acquired by or for the purchaser (cf. *Mississippi Valley Trust Co.* v. *Southern Trust Co., supra; Ithaca Trust Co.* v. *Ithaca Traction Corp., supra*). Again, in *Compton* v. *Jesup* (*supra*) the situation was the

same, at least in its essential features. There the Toledo and Wabash Railroad Company of Ohio made a mortgage with an after-acquired property clause, and later consolidated with the Wabash and Western Railroad Company of Indiana in the formation of a new corporation, the Toledo and Wabash Railway Company. There was a covenant in the agreement of consolidation that all mortgages given by either of the parties " shall be as valid and binding upon the whole of the road, real estate, fixtures, and personal property which may be described in such mortgage as though the same had been originally executed by such consolidated corporation " (p. 275). This latter corporation, having thus assumed all the obligations of the underlying mortgage, acquired a new terminal at Toledo. There was then a second consolidation, which resulted in the formation of still another corporation, the Toledo, Wabash and Western Railway Company. The question was as to the application of the underlying mortgage to the terminal at Toledo. The court held that the new corporation was estopped to deny the extension of the lien. Whether the same result might have been reached through the doctrine of accession, there is no occasion to consider. The first consolidated company had expressly assumed all the covenants of the mortgage as if executed by itself, and the new terminal had already been added, with the consequent extension of the equitable lien, when the second consolidated company took over the existing lines (cf. *United States Trust Co.* v. *Wabash, etc., Ry. Co.*, 32 Fed. Rep. 480). Within *Galveston R. R. Co.*, v. *Cowdrey* (*supra*) the estoppel was complete.

Nothing in these cases is authority for a holding that, apart from any principle of accession, a mortgagor can, by covenant in a mortgage, create an affirmative obligation running with the land whereby any and all subsequent purchasers acquiring for themselves other property convenient for use in connection with the mortgaged

parcel will be bound by force of an estoppel, and without any covenant of assumption, to subject the property so acquired to the lien of the mortgage. A, the owner of Blackacre, executes a mortgage to B with a covenant that if he or any future owner of the property shall acquire Whiteacre, the adjoining lot, the mortgage shall be extended to the parcel so acquired. Thereafter he sells to C, who acquires the adjoining parcel. The covenant, however framed, does not run with the land so as to be enforcible against C either at law or in equity. (cf. *Cole* v. *Hughes*, 54 N. Y. 444; *Crawford* v. *Krollpfeiffer*, 195 N. Y. 185; *Hurd* v. *Curtis*, 19 Pick. 459). A different question would arise if at the time of the sale to C the adjoining parcel had already been brought within the ownership of A, in which case C would be estopped to dispute the extension of the lien. What we are supposing is a case where C, and not A, acquires the adjacent land. The new owner does not stand in privity of estate with either the covenantor or the covenantee in respect of the new parcel (Clark on Covenants and Interests Running with Land, p. 91). Subject to a few exceptions not important at this time, there is now in this State a settled rule of law that a covenant to do an affirmative act, as distinguished from a covenant merely negative in effect, does not run with the land so as to charge the burden of performance on a subsequent grantee (*Miller* v. *Clary*, 210 N. Y. 127; *Sheehan* v. *Spring Valley, etc., Corp.*, 194 App. Div. 119; Clark on Covenants and Interests Running with Land, pp. 157, 158; cf. *Morehouse* v. *Woodruff*, 218 N. Y. 494, 501; *Booth* v. *Knipe*, 225 N. Y. 390, 395). This is so though the burden of such a covenant is laid upon the very parcel which is the subject-matter of the conveyance. *A fortiori* the same result must follow where there is an attempt to charge the burden upon another and independent parcel. There is nothing in the law of railroad corporations exempting them from the restrictions applicable to persons generally in the

creation of novel servitudes or other incidents of tenure (cf. *Norcross* v. *James*, 140 Mass. 188, 191, 192; *Keppell* v. *Bailey*, 2 Myl. & K. 517, 535; *Tulk* v. *Moxhay*, 2 Phillips, 774; *Hodge* v. *Sloan*, 107 N. Y. 244; *Bristol* v. *Woodward*, 251 N. Y. 275; Clark, *supra*, p. 57). So, indeed, it was held, in effect, if not in terms, in *Mississippi Valley Trust Co.* v. *Southern Trust Co.* (*supra*); *Trust Co.* v. *City of Rhinelander* (*supra*, at 69); *New York Security & Trust Co.* v. *Louisville, etc., R. R. Co.* (102 Fed. Rep. 382, 398); *Susquehanna Trust, etc., Co.* v. *United Tel. & Tel. Co.* (6 Fed. Rep. [2d] 179); and *Railway Steel Springs Co.* v. *Chicago, etc., R. R. Co.* (246 Fed. Rep. 338, 347; affd. *sub nom. Metropolitan Trust Co.* v. *Chicago, etc., R. R. Co.*, 253 id. 868).

What has been written is no denial that the new owner will be charged if the circumstances of the transaction are sufficient to bind him by an estoppel (that is, an estoppel by deed, for there is clearly none *in pais*), just as he may be bound in other circumstances by a covenant of assumption (Foley and Pogue, After Acquired Property under Conflicting Corporate Indentures, 13 Minn. L. Rev. 94, 95). What is meant is merely this, that the acceptance of a deed subject to such a mortgage of record does not avail without more to give rise to the estoppel, for the mortgage to that extent is invalid and inoperative. The buyer takes the land *cum onere* in the sense that he must carry out the covenant as to after-acquired property in so far as it was already specifically enforcible against the seller by force of acquisitions prior to the purchase. He does not take it *cum onere* in the sense that he must carry out the covenant in respect of acquisitions, not within the principle of accession, made thereafter by himself. The distinction is clearly marked in *Ithaca Trust Co.* v. *Ithaca Traction Corp.* (*supra*), where a separate power house acquired by a reorganized corporation was held to be free from the lien of an underlying mortgage, though power contracts previously acquired were part of

the security. If *Citizens' S. & T. Co.* v. *Cincinnati & Dayton Traction Co.* (106 Ohio St. 577) may seem to involve a holding to the contrary, we are to remember that under the statutes of Ohio governing the consolidation of corporations (Ohio General Code, § 9038), "debts, liabilities, and duties of either company, thenceforth shall attach to the new company, and be enforced against it to the same extent as if such debts, liabilities, and duties had been contracted by it" (106 Ohio St. at 597, and cf. Foley and Pogue, 13 Minn. L. Rev. 81, 91). The case, therefore, was one of assumption of the mortgage and its covenants by virtue of a statutory duty (cf. *Pullman Car Co.* v. *Missouri Pac. Co.*, 115 U. S. 587, 594, 595), and not a case of such assumption through the operation of estoppel. True indeed it is that even where the duty has a statutory origin, improvements and extensions must be segregated to the lines to which they are appropriately related, since only thus can conflict be avoided between after-acquired property clauses in underlying mortgages of equal generality; accretions must still be marshalled according to their nature. On the other hand, the range of extension in such circumstances is spread beyond the limits that confine it when there is no duty of assumption, either contractual or statutory.

If estoppel is inadequate to enlarge the subject-matter of the mortgage, there is yet to be considered whether enlargement can be accomplished by force of the principle of accession. Accession as a source of title is quite distinct from the operation of a covenant for after-acquired property (13 Minn. L. Rev. at pp. 93, 94). Even in the absence of such a covenant the lien of a mortgage upon a railroad will extend to accretions such as fixtures that are physically united with the subject-matter of the mortgage, and to accretions that may be classified as appurtenances, where the bond of union is organic rather than corporeal. Not only that, but the nature of rail-

road property will cause the principle of accession to be liberally applied, so that things not strictly fixtures, and interests not strictly incorporeal hereditaments, may be brought within the principle as if they were fixtures or appurtenances under a narrow definition. This at least will be assumed, though the assumption has been questioned (13 Minn. L. Rev. 93, 94). Thus, in *Phœnix Iron Works Co.* v. *N. Y. Security & Trust Co.* (83 Fed. Rep. 757), machinery in the power house of a street railroad was held to be covered by a mortgage covering the road and plant, irrespective of any clause as to after-acquired property and irrespective of the question whether the machinery was so annexed as to constitute a fixture within the rules applicable to the ordinary mortgage upon real estate (cf. *Hoyle* v. *Plattsburgh, etc., R. R. Co.,* 54 N. Y. 314; *Minnesota Co.* v. *St. Paul Co.,* 2 Wall. [U. S.] 609). So, in *Trust Co.* v. *City of Rhinelander* (*supra*) there was a liberal interpretation of the scope of an "appurtenance." A mortgage by a water works company covered the plant and its extensions and additions. The city of Rhinelander became the purchaser of the plant, and laid seven miles of pipe tributary thereto. The court held that the easements thus acquired were incorporeal hereditaments, "appurtenances" to the plant itself, and thus subject to the mortgage within the principle of accession (p. 70). To the same effect are other cases (*Harris* v. *Youngstown Bridge Co.,* 90 Fed. Rep. 322, 330; *Metropolitan Trust Co.* v. *Chicago, etc., R. R. Co., supra; Mississippi Valley Trust Co.* v. *Southern Trust Co., supra,* at p. 767; *Commercial Trust Co.* v. *Chattanooga Ry. & L. Co.,* 281 Fed. Rep. 856; *Willink* v. *Morris Canal & Banking Co.,* 3 Green's Ch. Rep. [N. J.] 377, and as to "appurtenances" generally cf. *Kenney* v. *Apgar,* 93 N. Y. 539, 549; *Ogden* v. *Jennings,* 62 N. Y. 526, 531). A straightening of tracks supplies a kindred illustration. It is not difficult to imagine other situations involving a like problem, though in some the conclusion

will be more in doubt. At times stations or terminals may be so wedded to a particular road by construction or adaptation as to be almost inseparably a part of it. There is no need to formulate the rule for those and other cases in advance of the event.

The principle of accession, however liberally interpreted, cannot bring within the mortgage the power house and the barn. We put aside for the moment the extension of the mortgage to rolling stock, supplies and miscellaneous equipment. The power house and the barn are built upon land not owned by the merged corporations or any of them at the time of the merger. What is even more important, they serve the uses, not only of the Steinway line, but of all the other lines that have been operated since the merger by the merging corporation. Each road has been subject from the beginning to its own independent mortgage with after-acquired property clauses substantially the same. In these circumstances there is no more reason for holding the new buildings to be accessions to one road than for holding them accessions to the others. If accessions to one they must have been accessions to all, and this in uncertain proportions, fluctuating from year to year with the extent and nature of the use. Title by accession imports something more, however, than an executory right to acquire a lien or interest in the future through the judgment of a court of equity. It imports a lien or interest presently valid alike in equity and at law. If the use of the power house and the barn for the benefit of the merged lines gives any interest at all to the underlying mortgagees, it is at most a right to compel the creation of a lien in equitable proportions as an incident to the jurisdiction to enforce the specific performance of a covenant. The reasons have already been stated why the covenant is unenforcible against an assignee or a purchaser as to later acquisitions. If those reasons are valid and the property is not subject to an equitable mortgage through the operation of the

covenant, the gap cannot be bridged and the difficulty avoided by rejecting the covenant in form and enforcing it under a new name, either accession or something else. What is involved is more fundamental than adherence to a ritual.

Since neither estoppel nor accession will extend the underlying lien to the power house or barn, it remains to be considered whether there is to be discovered some other equity whereby the extension can be justified. We are told that such an equity exists in the necessity of providing the underlying mortgagees with a substituted security as compensation for what was lost when the barn and the power house were abandoned or dismantled. Withold this security, it is said, and through the action of the merging corporation the subject-matter of the mortgage will have become a mere shell, a railway without power to move cars, without cars to be moved, and without barns in which to store cars. Granting, though provisionally only, that these consequences, if real, would supply the foundation of an equity, the assumption of their existence has its origin in a misconception of the facts. The Steinway mortgage was either a lien on the new power house and the new barn at the time of their construction, or it was never a lien at all. If it was not a lien at that time, then the lien of the new consolidated mortgage attached *eo instanti* for the benefit of the consolidated mortgage bondholders, and the plaintiff, to prevail, must be able to show that the lien thus attaching has been divested or subordinated. But plainly there was no impairment of the security of the underlying Steinway mortgage, no reduction of the Steinway line to the state of an empty shell, when the lands for the new barn and the new power house were acquired by the merging corporation and the new buildings were erected. The land for the new barn was acquired in 1896, and the work of construction completed a short time thereafter.

The old barn was not destroyed, and upon a sale of the Steinway line at that time under a judgment of foreclosure it would have gone to the purchaser along with the line itself. Indeed, it will go even now, for the tools, and the tools only, have been taken from the shops, which were already out of date. The new power house was acquired and put in operation in 1908, but for nearly a year thereafter the machinery in the old power house was oiled and kept in good condition, with the result that a buyer at a foreclosure sale at that time would have become the owner of the line intact, equipped for present use. The old power house is still there, but the machinery has been sold as junk, and the proceeds, about $14,000, have been allocated to the reduction of the Steinway lien. In the meantime, however, before the machinery was scrapped, the lien of the consolidated mortgage had attached to the new improvements, there being nothing in the purchase of the land or the construction of the buildings that made it necessary to destroy or remove any part of the security. Very likely the trustee for the Steinway bondholders might have enjoined the merging corporation from wasting the security by the later removal of any part of the old equipment. No such injunction was sought, not improbably for the reason that the bondholders had more to gain from economy of operation by a consolidated company and the application of the income to the payment of interest on the bonds than from the preservation of tools and machinery in the contingency at some distant time of a sale under foreclosure. At all events, the line was not a shell when the newly-acquired property came under the lien of the consolidated deed of trust. During a substantial period thereafter, it was maintained, not only with its own power house and barn, but with equipment and machinery properly kept up. For any loss that has been suffered through the removal at a later time of this equipment and machinery, the plaintiff had its remedy, equitable or

legal. Even now it does not show the relation between the value of the equipment and machinery and the value of the land and buildings, part of the old line. The failure of the Steinway bondholders or of the plaintiff as their spokesman to take advantage of remedies, preventive or reparative, did not divest a lien in favor of the consolidated bondholders attaching in the interval.

What has been written as to the lien upon the power house and the barn supplies the answer to the question as to the liens upon the rolling stock, supplies and miscellaneous equipment. In respect of the liens upon the rolling stock the appeal is by the plaintiff, the trustee for the Steinway bondholders; in respect of the tools, supplies and miscellaneous equipment, the appeal is by the Bankers Trust Company, the trustee for the bondholders under the consolidated mortgage. The cars in use by the merged lines at the date of the merger are no longer in existence. The cars now in existence were bought by the merging corporation, and with the exception of nineteen cars which were subjected to the Steinway lien were never allocated to any special line, but were used indiscriminately for all. In the absence of a covenant, the merging corporation did not subject the new cars thus indiscriminately used to the underlying liens (*New York Security & Trust Co.* v. *Louisville, etc., R. R. Co., supra,* at p. 398; *Mississippi Valley Trust Co.* v. *Southern Trust Co., supra; Metropolitan Trust Co.* v. *Chicago, etc., R. R. Co., supra,* at p. 878; *Hinchman* v. *Point Defiance Ry. Co.,* 14 Wash. 349; *United States* v. *New Orleans R. R. Co.,* 12 Wall. [U. S.] 362). The situation might be different if they had been allocated specifically or even chiefly to the use of a particular road (*Commercial Trust Co.* v. *Chattanooga Ry. & L. Co., supra*). There is no need to dwell upon the difference, for the defendant trust company does not appeal from the segregation to the plaintiff of the cars appropriated to its use by the act of the receivers.

On the other hand, the application of the same principle that excludes the cars generally, forbids the subjection of the tools, supplies and miscellaneous equipment to the lien of the underlying mortgages, and requires a modification of the judgment, on the appeal of the Bankers Trust Company, by declaring them to be subject to the prior and superior lien of the consolidated mortgage.

The property 7 and 9 Borden avenue was correctly held to be within the coverage of the Steinway mortgage, since title thereto was taken in the name of the Steinway company, without reservation or condition.

The land, the buildings and the equipment, the subject of this controversy, were paid for with moneys supplied by the consolidated mortgage bondholders. Without the aid of those moneys the unified operation of the lines would have been impossible, and the underlying bondholders would have lost the benefit of economies and facilities incidental to the merger. As a consequence of the merger, or at least as its sequel, foreclosure has been warded off for upwards of twenty-five years, and an income has been earned from which interest has been paid on the underlying obligations.

From the viewpoint of economics, the furtherance of business interests, there have thus arisen equities in favor of the consolidated bondholders that may not be ignored altogether in determining their equities from the viewpoint of the law. To the extent that improvements, though made upon newly-acquired lands through the use of the new loan, have been charged with a lien, declared with reasonable clarity, in favor of underlying mortgage bondholders, the courts will give effect, through the remedy of specific performance, to the ensuing equitable right. On the other hand, the advantages incidental to merger and consolidation would be discouraged, and new loans would be precarious, if less than reasonable clarity were exacted as a condition of subordination and extension.

The judgment of the Appellate Division should be modified by declaring the tools, supplies and miscellaneous equipment to be subject to a prior lien in favor of the trustee under the consolidated mortgage, and as modified affirmed without costs to either party.

POUND, CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment accordingly.