THE BUFFALO ACADEMY OF THE SACRED HEART, Plaintiff, *v.* BOEHM BROS., INC., Defendant.

Fourth Department, June 27, 1934.

*Maynard C. Schaus*, for the plaintiff.

*Kenefick, Cooke, Mitchell, Bass & Letchworth* [*D. J. Kenefick, Jr.*, of counsel], for the defendant.

THOMPSON, J.   This is a submission of a controversy in which we must determine whether or not the title to certain real estate is marketable.   Plaintiff and defendant have contracted together that plaintiff may pay and discharge an indebtedness of $60,000, which it owes to defendant, by conveying to defendant a good and marketable title to some building lots, which are contained in a certain subdivision located partly in the town of Amherst and partly in the city of Buffalo in Erie county.   If title to the property proves unmarketable, plaintiff must pay defendant the sum of $60,000.   Plaintiff has tendered a deed of the lots to defendant. Defendant has refused to accept the deed, claiming title to the lots is not marketable, because of certain restrictions imposed upon them by the terms of conveyances of other lots located in the same subdivision made by plaintiff's grantor.   It is the contention of plaintiff that the so-called restrictions were not mentioned or excepted in plaintiff's deed, that it did not have actual or constructive knowledge of their presence in deeds to other lots, and that in any event they did not affect the lands in suit, being either covenants exacted by the grantor for the benefit of, and creating no burden upon, his remaining lands, or mere personal covenants which did not run with the land.                   .

Plaintiff's grantor set up two adjoining subdivisions, one of which included all the lots mentioned in the contract.   They were called University Terrace, Part One, and University Terrace, Part Two.   He caused surveys to be made, the additions to be laid out in streets and lots, and maps to be prepared and filed in the Erie county clerk's office.   No plan, scheme or declaration of a purpose to restrict any particular portions of these subdivisions or lots or locations thereon to residential or other specific purpose was included or indicated in the maps filed, nor does any

such appear in the agreed statement of facts. None of the deeds contains any covenant on the part of the grantor or grantors that the remainder of the tract should be governed by and be subject to the same restrictions. (*Schermerhorn* v. *Bedell*, 163 App. Div. 445; affd., 221 N. Y. 536.)

In selling a great number of lots, plaintiff's predecessor in title followed no declared or uniform policy of development or improvement in pursuance of which restrictions either for or against the grantees in the various deeds was established. In some of the deeds the land conveyed was restricted to the erection of one-family houses, in others, two-family houses. The erection of stores was permitted on some of the lots, provided no gasoline or oil business should be conducted by them. In a great number of the deeds a saving clause, so called, was inserted providing that the grantee took no rights so far as the restrictive provisions of the deed were concerned, in remaining or other lots found in the subdivision. Again a large number of deeds were made in which no restriction was found. From these and other facts found in the submission, it is apparent that it was the design of the erector of these subdivisions to sell lots and to restrict them where, in his judgment, it was, or from time to time it became, necessary and advisable to the bringing about and maintaining desirability and salability of the lots in the subdivision, for residential and other purposes. It is clearly manifest that plaintiff's grantor had no set plan of restricting the use to which the lots he sold should be put, and that he did not intend to bind himself or his remaining lands by the various covenants found in the deeds which he gave of certain of the lots. The situation is also pregnant with the suggestion that as the lots were disposed of and the addition became built up, the grantor apprehended that he might find it advisable and necessary, for purposes of serving the community which the occupation of this large tract of land would bring into existence, to sell certain of the lots in central available parts of the addition for business purposes. There is no indication in the stipulated facts that the grantor intended to bind himself or any of his grantees not to make such sales, in fact it is clear that the mind of the grantor was to restrict his grantees in favor of the remaining lands and not to give the grantees restrictions in their favor as against such lands.

" If restrictions evidenced by covenant and binding in their terms upon the land of the grantee, are to be read as meaning that the grantor imposes a like restriction upon any land retained by him, the inference may not be drawn without something to show that exact uniformity in respect of all restrictions was of the

essence of the project. * * * Buyers must have been invited to 'come in and purchase on the footing that the whole of the property offered for sale was to be bound by one general law' as to the size of the lots and the character of the buildings." (*Bristol* v. *Woodward*, 251 N. Y. 275, 285.)

So it is that we find a failure of proof of a uniform plan of restrictions confining the lands of the subdivisions to use for residential purposes.

Coming to the restriction set up in the deed made by plaintiff's predecessor in title to the Kendall Refining Company, we find a different situation. The premises conveyed to this grantee are situated in the intersection of the city of Buffalo's main street and a residential street. It is obvious that in the sale of such premises a restriction in favor of the grantee to the effect that adjacent lands owned by the grantor should not be used for a kindred purpose to that for which the grantee acquired its property was required of the grantor. So in this conveyance we find the following: "This conveyance is made and accepted subject to the following restrictions, which shall be covenants running with the land: * * * And the party of the first part covenants that he will not sell, or cause or permit to be sold, gasoline or lubricating oils, or motor fuels, nor erect, or cause to be erected, or permit to be erected, any other gasoline, lubricating oils or motor fuels distributing or sale station or stations upon the entire tracts of land known as University Terrace Number (or Part) 1 and University Terrace Number (or Part) 2."

Plaintiff claims that this provision is purely a personal covenant of the grantor, binding him only and not the land, and among other things, points to the absence of words binding the grantor's assigns or grantees. Defendant claims that it is a covenant running with the land, and binding on all the lands in the subdivision remaining after delivery of the deed containing the covenants. The absence of terms frequently found in such covenants, to wit, heirs, assigns and grantees, is not significant. The right to assign is an incident to ownership, and the use of the word is not requisite to give the estate conveyed alienability. (*Church* v. *Brown*, 15 Ves. Jr. 258, 263; *Grant* v. *Carpenter*, 8 R. I. 36, 38.)

"Accordingly if a covenant capable of running with the land relates to a thing in esse, the assigns of the covenantor are bound, though he has not named his heirs and assigns, and has not covenanted on their part." (7 R. C. L. 1100, 1101.)

"It adds nothing of substance, for it is the expression of an obligation that if not stated would be implied." (*Guaranty Trust Co.* v. *N. Y. & Q. C. R. Co.*, 253 N. Y. 190, 200.)

The subject of the covenant pertains to the land. It is more than a personal contract. It is a grant. In such circumstances it must be inferred that it was intended by the parties to apply to the successors in title of the covenantor.

" The question whether a contract having relation to lands is personal, or whether it constitutes a charge upon the lands, obviously, must be determined by a consideration of the expressed intentions of the parties and of the existence of any interest in the land raised by force of its covenants. Words of grant are not essential to create the interest, and a covenant may be construed as a grant." (*Mott* v. *Oppenheimer*, 135 N. Y. 312, 319, 320.)

We think the provision must be construed to be a covenant on the part of the grantor that he intends the deed to carry a monopoly to the grantee in the business mentioned so far as the lots in the terraces still retained by him are concerned. He covenants that " he will not sell, or cause or permit to be sold, gasoline * * * nor erect or cause to be erected, or permit * * * any * * * sale station * * * upon the entire tracts of land known as University Terrace Number (or Part) 1 and University Terrace Number (or Part) 2." In the circumstances we hold that this language means that grantor and grantee, as a part of the transaction affecting the sale of the lands, agreed that a restriction should be imposed upon all the lands remaining to the grantor after the sale of the lands in question, prohibiting their use for a purpose or purposes which would compete with the grantee's business. The covenant is one relating to the land; it " touches and concerns the land " itself. Its benefits pass with the ownership. The deed itself establishes privity of estate between the covenantor and the covenantee. (*Cole* v. *Hughes*, 54 N. Y. 444; *Crawford* v. *Krollpfeiffer*, 195 id. 185.) Such a covenant set up in a deed is like the grant of an easement, is notice to the world and especially to whoever takes title to the property upon which it is charged. (*Spencer* v. *Lighthouse*, 114 App. Div. 591.)

In holding that the recording of a deed intimately connected with, although not strictly a part of the defendant's chain of title must be regarded as constructive notice of the covenants contained in it, the court in *Holt* v. *Fleischman* (75 App. Div. 593, at p. 600) said: " While the deed from Ann Bushnell to Perley Holt is not directly within the defendant's chain of title, yet it is intimately related to the land retained by Mrs. Bushnell when she made the covenant. We think the existence of this deed with the covenants upon the record must be regarded as constructive notice to the defendant."

The covenant contained in the deed from plaintiff's predecessor in title to the Kendall Refining Company imposes a restriction on the lands which plaintiff offers to convey to defendant, and renders the title to such lands unmarketable.

The submission should be determined in favor of the defendant, without costs.

All concur. Present — SEARS, P. J., TAYLOR, THOMPSON, CROSBY and LEWIS, JJ.

Submitted controversy determined in favor of the defendant, without costs.