JACK KINMAN, Plaintiff, *v.* NYREALTY CORPORATION, Defendant.

Supreme Court, Trial Term, New York County, March 17, 1938.

*Sol O. Maltz*, for the plaintiff.

*Clark & Reynolds* [*Albert B. Gins* and *Leonard J. Reynolds* of counsel], for the defendant.

McLAUGHLIN (CHARLES B.), J.   This action is one in replevin to recover fifty-two Electrolux refrigerators in the apartment house known as 583 West Two Hundred and Fifteenth street, New York city.

The salient facts to be considered are contained in the written stipulation marked Exhibit 1. It appears that the defendant is the owner of the premises in question, consisting of a large apartment house, containing sixty-six apartments. It acquired these premises by purchase after the following events had taken place:

The first mortgage on the premises involved was held by the Prudential Insurance Company of America and was foreclosed in 1934. This property was bought in by the Prudential Insurance Company of America in September, 1934. Thereafter it conveyed to the Column Holding Corporation, which corporation in turn conveyed the premises to the defendant Nyrealty Corporation on January 26, 1936.

This foreclosed mortgage was made by Echo Park Building Corporation to New York Title and Mortgage Company for $250,000 on February 10, 1927, and recorded February 14, 1927. The mortgage contained the usual short personal property clause reading: " Together with all fixtures and articles of personal property, now or hereafter attached to, or used in connection with the premises, all of which are covered by this mortgage."

It was assigned by the New York Title and Mortgage Company to the Prudential Insurance Company of America on June 25, 1928.

Indian Gardens Holding Corporation became the owner of the premises on September 3, 1929, subject to the aforementioned first mortgage and also subject to a second mortgage made by Morn Holding Corporation to Wilton Holding Corporation dated August 1, 1929, and recorded August 3, 1929, containing a long form personal property clause.

Between September 3, 1930, and October 6, 1931, Indian Gardens Holding Corporation purchased, pursuant to eleven separate conditional sales contracts, the refrigerators in question from Consolidated Gas Company of New York. The last six contracts of sale, involving twenty-six refrigerators, were duly filed in the office of the register of New York county.

Subsequent to the purchase by the Indian Gardens Holding Corporation of forty-four of said refrigerators it made a subordinate third mortgage covering the premises to Regal Investing Corporation on July 27, 1931, and recorded July 31, 1931, containing a long form personal property clause.

Foreclosure proceedings were instituted by Land Estates Incorporation, plaintiff, against Indian Gardens Holding Corporation and others, including Regal Investing Corporation, defendants. Regal Investing Corporation and Indian Gardens Holding Corporation were each personally served.

The concession is made that the second mortgage above mentioned equitably belonged to the Prudential Insurance Company of America, and the rents collected in said foreclosure by the receiver were awarded and paid over to said Prudential.

The receiver appointed in this action ascertained that Indian Gardens Holding Corporation had paid only $2,804.90 out of a total price of $8,145 for said refrigerators, having defaulted in December, 1931, in the monthly installment payments required by the conditional sales contracts.

The receiver, pursuant to permission given him by this court upon his request, commenced to make monthly payments for the refrigerators on May 3, 1932, and continued to make them after his receivership was extended to a foreclosure of the first mortgage commenced by the Prudential in November, 1933. He paid for the refrigerators the sum of $5,232.10, leaving a balance of only $108 under the last two contracts, which the Prudential paid after obtaining title to the premises.

At the end of the foreclosure suit there remained a deficit of $136,763.64, as reflected by the referee's report to sell in the Prudential's action. All of the rents collected by the receiver, first in the Land Estates' action and then in the Prudential's action, were awarded to the Prudential by the courts and applied to this deficit, reducing it to $119,926.92.

The plaintiff's claim is as assignee of Regal Investing Corporation, the mortgagee, as a result of the mortgage created by Indian Gardens Holding Corporation on July 27, 1931, as set forth earlier. The plaintiff's assignment is dated May 13, 1933, and acknowledged over three years later on June 1, 1936, approximately fifteen days prior to the commencement of the instant action, and was never recorded.

In the foreclosure action instituted by the Prudential, Regal Investing Corporation was made a party defendant, duly served and defaulted.

This court is satisfied that, although this action is one in law and not in equity, the defendant must succeed. These refrigerators came under the lien of the Prudential's first mortgage and, therefore, the defendant acquired title to them through the foreclosure of said mortgage. The matter is *res adjudicata* and the claim of the plaintiff is barred. When the Indian Gardens Corporation took title it did so subject to the mortgage of Prudential. The personal property clause in that mortgage covered after-acquired fixtures, such as these refrigerators. The claim of the plaintiff is that the mortgage of Prudential did not cover these refrigerators at the time

they were put in the premises. That claim is specious. The new refrigerators were just so many accessions or substitutions for non-mechanical refrigerators already in the building and subject to the Prudential mortgage. These non-mechanical refrigerators were fairly new and had value. The plaintiff, however, has utterly failed to show that they were of no value, and, therefore, the mortgage of Prudential attached immediately to the new refrigerators. (*Guaranty Trust Co.* v. *New York & Q. C. R. Co.*, 253 N. Y. 190; *Roche* v. *Thurber*, 246 App. Div. 850; affd., 272 N. Y. 582.)

The reasoning of the Court of Appeals in *Guaranty Trust Co.* v. *New York & Q. C. R. Co.* (*supra*) is applicable and conclusive in addition to the previous reason. In that case it was stated that property acquired by the mortgagor after making the mortgage will be subject to its terms if the property comes within the description of the covenant.

" It is otherwise in respect of purchasers, and even at times successors. To spread the lien of the mortgage to property acquired by these, there must be an independent ground of duty. This may have its origin in a statute or in a covenant of assumption or in the principles of estoppel or accession or in some other kindred equity." (*Guaranty Trust Co.* v. *New York & Q. C. R. Co.*, *supra*, at p. 199.)

In this case the Prudential, under its mortgage, had a lien on the rents, after default under the mortgage, when the receiver was appointed. The receiver from these rents expended $5,232.10 for the account of these refrigerators under and pursuant to an order of this court. Not to have done so would have resulted in the conditional vendor's removing the refrigerators with consequent damage to the beneficial use of these premises. The Electrolux refrigerators replaced non-mechanical refrigerators of usable value and which were from two to two and one-half years old. These were removed without the consent of the first mortgagee. The Prudential has been awarded all the remaining rents by this court. It appears that its moneys were thus used to make payments for the refrigerators through the receiver. A deficiency remains of $119,926.92.

The plaintiff's assignor, Regal Investing Corporation, although a party to the foreclosure suit, stood by and permitted the Prudential's rent to be diminished. No assertion of any kind was made by it at this time that it sought the benefit of these refrigerators under its third mortgage. Neither the Regal Investing Corporation nor this plaintiff ever made known to the receiver, the Prudential, Column Holding Corporation or this defendant the fact that they

made this alleged claim to the refrigerators until the date of the letter written by the attorney on June 16, 1936, to the defendant and the subsequent institution of the present suit on June 18, 1936. This covered a period of almost four and one-half years after the receiver had taken possession. Such conduct should clearly estop the plaintiff from obtaining the relief sought. (*McMillan* v. *Leaman*, 101 App. Div. 436; *McFadden* v. *Allen*, 134 N. Y. 489; *Barnard* v. *Campbell*, 55 id. 456.) Mr. Justice SHIENTAG in *Title Guarantee & Trust Co.* v. *Woman's Hospital* (N. Y. L. J. Feb. 3, 1938, p. 568) expressed similar views.

Irrespective of any substitution of refrigerators, the doctrine of " other kindred equity," as expressed in *Guaranty Trust Co.* v. *New York & Q. C. R. Co.* (*supra*), must be given force and effect. Under the circumstances presented this principle of law applies. The plaintiff and his predecessor in interest stood by and failed to speak regarding the claim now made over a period of years. They paid but a small proportion of the purchase price of the refrigerators. On the other hand, when the bulk of payments were made with defendant's predecessor's moneys no claims of ownership or even beneficial interest were made by the plaintiff or his predecessor. Here, then, there is the kindred equity which bars the plaintiff even in an action at law to recover possession of this property.

Moreover, it would appear that plaintiff cannot make out a cause of action because no proper demand for possession of the refrigerators was made before the commencement of this action. The letter of plaintiff's attorney failed to properly inform the defendant of any defect in its title nor did it specify in particularity which of the refrigerators then in the building it was claimed was his property. (*Employers' Fire Insurance Co.* v. *Cotten*, 245 N. Y. 102.)

There is no need to discuss the others reasons urged by the defendant. Judgment for the defendant, dismissing the plaintiff's complaint on the merits.