ITHACA TRUST COMPANY, as Trustee, Respondent, *v.*
THE ITHACA TRACTION CORPORATION et al., Appellants,
and FARMERS' LOAN AND TRUST COMPANY, as Trustee,
Respondent, Impleaded with Others.

**Mortgage — corporations — railroads — mortgage of public
utility corporation valid as to necessary and appropriate after-
acquired property — lien of mortgage by street railway com-
pany covering after-acquired properties and extensions of the
road not confined to property acquired at time mortgages
were made — extensions authorized thereafter covered —
properties acquired by merger within after-acquired property
clauses — after-acquired contract for power subject to mort-
gage — contract for power modified rather than terminated by
notice of cancellation by power company accompanied by offer
to continue to furnish power on modified terms which was
done — transfer to successor of mortgagor of lease of power
plant and bill of sale of machinery and appliances which it
sold receiving long time contract for power and notes in pay-
ment — contract for power subject to lien of mortgage but
lease, bill of sale and proceeds thereof are not.**

1. A mortgage by a public utility corporation is valid in respect to
after-acquired property necessary and appropriate for its physical
operation under its franchise and the performance of its public duties.

2. Where by the terms of mortgages, executed by a street railway
company, all after-acquired property and all extensions of the road
were comprehensively covered so that every interest that the railway
could acquire was included, and where, thereafter, upon reorganization
its successor obtained its title to the railway property subject to the
underlying mortgages and all the broad and sweeping provisions
thereof, it cannot successfully maintain, in an action for foreclosure of
one of the mortgages, that the after-acquired property clauses operate
only on property acquired within the capacity of the corporation at
the time the mortgages were made and do not cover extensions after-
wards authorized, where the extensions were authorized when made
or were subsequently validated, including all liens thereon.

3. Nor can it be successfully contended that the after-acquired
property clauses do not spread to properties acquired by merger where
the mortgagor took actual possession thereof and operated them as a
physical and visible part of its road and its successor took them as

part of the railway system with no prior equities therein. (*Metropolitan Trust Co.* v. *Chicago & E. I. R. Co.*, 253 Fed. Rep. 868, distinguished.)

4. Power facilities possessed by the mortgagor when its successor acquired its property are subject to the mortgage and where it had a power plant of its own when the mortgage was given but thereafter abandoned it and made a contract with another corporation for power from its plant, the contract became subject to the mortgage.

5. A contention that when receivers of the mortgagor took possession of its properties there was no contract for power for the reason that on the day before they were appointed, notice was given by the power company that the contract was canceled for failure to perform, cannot be sustained, where, at the same time, it offered to continue to furnish power on modified terms and thereafter power was furnished to the railway company and its successor on those terms. The contract was modified rather than terminated.

6. The facts that receivers of another railroad, the affairs of which were interwoven with those of the mortgagor, took a long time lease of the real property of the power company and a bill of sale of its machinery and appliances and thereafter transferred them to the successor of the mortgagor, which sold the lease and personal property to another corporation for a sum represented by notes and for a long time contract for power, do not sustain a holding that the power contract and the cash received in satisfaction of the notes represented the original power house of the mortgagor and thus became, as after-acquired property, subject to the underlying mortgages, and that the receivers acted as a conduit to carry the power plant title of the mortgagor to its successor. The receivers could not carry over any interest of the mortgagor in the power plant that it had not then acquired. The mortgagor never owned the power plant or the lease or the bill of sale. It merely had a contract for power from that source and while it is proper to impress the contract with the lien of the mortgage, the lease and bill of sale and the proceeds thereof are not subject thereto.

*Ithaca Trust Co.* v. *Ithaca Traction Corp.*, 221 App. Div. 818, modified.

(Argued May 11, 1928; decided May 29, 1928.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered September 12, 1927, unanimously affirming a judgment in favor of plaintiff entered upon the report of a referee.

*Martin A. Schenck, Charles E. Hotchkiss* and *H. C. McCollom* for appellants. The after-acquired property clause in the mortgage should have been limited to the property acquired by the mortgagor and within its then charter. There is no equity requiring the spreading of this lien to additional properties acquired under other corporate franchises. (*MacDonnell* v. *Buffalo L., T. & S. D. Co.*, 193 N. Y. 92; *Titusville Iron Co.* v. *City of New York*, 207 N. Y. 203; *Carpenter* v. *Black Hawk Gold Mining Co.*, 65 N. Y. 43; *Polhemus* v. *Fitchburg R. R. Co.*, 123 N. Y. 502; *Indian Creek Coal Mining Co.* v. *Home Savings & M. Bank*, 249 Pac. Rep. 499; *Zartman* v. *First Nat. Bank*, 189 N. Y. 267; *Central Trust Co.* v. *Pittsburg, S. & N. R. R. Co.*, 223 N. Y. 347; *Commercial Trust Co.* v. *Chattanooga Ry. & Light Co.*, 281 Fed. Rep. 856; *Railway Steel Springs Co.* v. *Chicago & E. I. R. Co.*, 246 Fed. Rep. 338; 253 Fed. Rep. 868; *Trust Company of America* v. *City of Rhinelander*, 182 Fed. Rep. 64.) Property acquired and operated under other corporate franchises and later merged into the mortgagor corporation, was not acquired by the mortgagor within the terms of the after-acquired property clause. (*Irving Bank-Columbia Trust Co.* v. *New York Rys. Co.*, 292 Fed. Rep. 429; 292 Fed. Rep. 440; *Polhemus* v. *Fitchburg R. R. Co.*, 123 N. Y. 502; *Irvine* v. *New York Edison Co.*, 207 N. Y. 425; *Louisville Trust Co.* v. *Cincinnatti Inclined-Plane Ry. Co.*, 91 Fed. Rep. 699.) Property acquired and operated under other corporate franchises and later purchased, by a third corporation, even along with the purchase of the property of the mortgagor, was not after-acquired property of the mortgagor within the terms of the after-acquired property clauses. (*Seventy-eighth St. & Broadway Co.* v. *Purssell Mfg. Co.*, 173 App. Div. 887; *Metropolitan Trust Co.* v. *Chicago & E. I. R. Co.*, 253 Fed. Rep. 868; *New York Security & Trust Co.* v. *Louisville, E. & St. L. Consol. R. Co.*, 102 Fed. Rep. 382; *Hodder* v. *Kentucky & Great Eastern Ry. Co.*, 7 Fed.

Rep. 793; *Susquehanna Trust & Safe Deposit Co.* v. *United Tel. & Tel. Co.*, 6 Fed. Rep. [2d] 179; *Murray* v. *Farmville, etc., R. Co.*, 101 Va. 262; *Dinsmore* v. *Racine & Miss. Rd.*, 12 Wis. 725; *United States* v. *New Orleans R. R. Co.*, 12 Wall. 362; *Westinghouse Elec. & Mfg. Co.* v. *Brooklyn R. T. Co.*, 276 Fed. Rep. 152; *Harris* v. *Youngstown Bridge Co.*, 90 Fed. Rep. 322; *Central Improvement Co.* v. *Cambria Steel Co.*, 201 Fed. Rep. 811.)

*Frank Irvine* and *George S. Mittendorf* for respondent. All property of the Ithaca Street Railway Company, whether its property at the time the first and second mortgages were executed or acquired thereafter in any manner, was subjected to the liens of those mortgages as of the time of the acquisition of the property. (*Platt* v. *N. Y. & Sea Beach R. Co.*, 9 App. Div. 87; 153 N. Y. 670; *New York Security Co.* v. *Saratoga Gas Co.*, 88 Hun, 569; 157 N. Y. 689; *Pintsch Compressing Co.* v. *Buffalo Gas Co.*, 280 Fed. Rep. 830; *Holroyd* v. *Marshall*, 10 H. L. Cas. 191; *Mitchell* v. *Winslow*, Fed. Cas. 9673; *Dunham* v. *Cincinnati, etc., R. Co.*, 1 Wall. 254; *Thompson* v. *White Water Valley R. Co.*, 132 U. S. 68; *Compton* v. *Jesup*, 68 Fed. Rep. 263; *Trust Co. of America* v. *Rhinelander*, 182 Fed. Rep. 64; *Wade* v. *Chicago, Springfield & St. L. R. Co.*, 149 U. S. 327.) The Ithaca Traction Corporation and its mortgagee took the property subject to all the terms and conditions of the underlying mortgages, including the after-acquired property clauses, and whatever extensions, improvements or changes may have been made by the Ithaca Traction Corporation were subject to the provisions of the underlying mortgages in this respect, and subject to their lien. (*Compton* v. *Jesup*, 68 Fed. Rep. 263; *Boston Safe Deposit Co.* v. *Bankers, etc., Co.*, 36 Fed. Rep. 288; *Trust Company of America* v. *Rhinelander*, 182 Fed. Rep. 64; *Fogg* v. *Blair*, 133 U. S. 534; *Gibson* v. *American L. & T. Co.*, 12 N. Y. Supp. 444; *Union Trust Co.* v. *Southern Sawmills Co.*, 166

Fed. Rep. 193; *Evans* v. *Kister*, 92 Fed. 828; *Manhattan Trust Co.* v. *Sioux City & N. R. Co.*, 68 Fed. Rep. 72; *Tippett* v. *Barham*, 180 Fed. Rep. 76.)

POUND, J.　The action is to foreclose a second mortgage given by the Ithaca Street Railway Company, dated January 2, 1894.　Prior to it is a first mortgage to defendant-respondent Farmers' Loan and Trust Company, dated July 1, 1892.

The Ithaca Street Railway Company, when the mortgage in suit was executed, owned and operated an electric street railway in the city of Ithaca.　The Cayuga Lake Electric Railway Company operated a line about two miles in length which was an extension of the line of the Ithaca Street Railway Company on Tioga street to Cayuga lake.　It was first leased by and then merged into the Ithaca Street Railway Company and became a part of its system in July, 1898.　The original line of the Ithaca Street Railway Company was extended in 1899 or 1900 by the construction of the loop which became an integral part of the system.

The Ithaca Street Railway Company on July 1, 1907, executed a third mortgage.　Foreclosure followed in 1912. The property of the Ithaca Street Railway Company was sold to Fitz, chairman of a reorganization committee. The Ithaca Traction Corporation, defendant-appellant, was organized in 1914 and the property of the Ithaca Street Railway Company was transferred to it.　The Traction Corporation made a mortgage to the predecessor of the appellant Irving Bank-Columbia Trust Company, covering all its property.

The judgment in this action directs the sale of practically all the property of the Traction Corporation. Judgment is also given against the defendants-appellants, Traction Corporation and Trust Company for $99,050 cash proceeds of the sale of the Remington Salt Company power house hereinafter referred to.

1928.]                    Opinion, per POUND, J.         [248 N. Y. 322]

The question presented on this appeal is as to the extent of the underlying mortgages and the property and rights secured thereby. The Traction Corporation claims that property and rights are included in the judgment which was never owned nor acquired by the Ithaca Street Railway Company. A patient examination of complicated facts is necessary to reach a proper conclusion on this point.

In addition to the corporations already named others are to be considered.

1. Ithaca and Cayuga Heights Railway was incorporated in 1904. It connected with the Ithaca Street Railway Company and extended north to the village of Cayuga Heights which is contiguous to the city of Ithaca and for residential purposes practically a part thereof. It was operated first by the Ithaca Street Railway Company, into which it was merged, then by its receivers and since by the Traction Corporation, which has extended the line about eight hundred feet to the north.

2. New York, Auburn and Lansing Railroad Company, which in 1905 built a steam railroad from Auburn to a junction with the Ithaca Street Railway Company near Renwick, now Stewart Park in Ithaca. Electric service was introduced at South Lansing, several miles from the Ithaca end. Its affairs were interwoven with those of the Ithaca Street Railway Company. A mortgage on its property was foreclosed at the time of the 1907 foreclosure of the third mortgage on the Ithaca Street Railway Company. A reorganization plan for both corporations followed. Fitz, as chairman of the reorganization committee, bought both properties. The steam railroad passed to Central New York Southern Railroad Corporation, organized to carry out the plan. The street railroad property passed to the Ithaca Traction Corporation, similarly organized. The plan was to make the Central New York Southern Railroad Corporation the holding corporation of the stock of the Traction Corporation and

the Traction Corporation a subsidiary of the Central New York Southern Railroad. The power property, hereinafter referred to, passed to the Traction Corporation and the Central New York Southern Railroad received bonds of the Traction Corporation as compensation.

By the terms of the underlying mortgages all after-acquired property and all extensions of the road were covered in the most comprehensive manner. Every interest that the railway company could acquire in relation to its railway system was included.

When the Traction Corporation obtained its title in 1912 to the property of the Ithaca Street Railway Company it acquired it subject to the underlying mortgages and all the broad and sweeping terms and provisions thereof.

The plaintiff takes the position, which has been sustained by the referee and the Appellate Division, that when the Traction Corporation obtained its title the Railway Company had and operated a street railway system, including its own property as described in the mortgage, together with after-acquired power facilities, the Loop and the Cayuga Lake and Cayuga Heights extensions and mergers above referred to, all of which were necessary and appropriate to its physical operation.

The appellant Traction Corporation, which acquired for the greater part of its own properties, the property of the Ithaca Street Railway Company, seeks to unscramble the property of the Ithaca Street Railway and separate from it the power facilities by which the railway was operated, the Cayuga Heights extension and other items which were at least utilized by the railway before the Traction Corporation acquired its title.

A mortgage by a public utility corporation is valid in respect to after-acquired property necessary and appropriate for its physical operation under its franchise and the performance of its public duties. (*Platt* v. *N. Y. & Sea Beach Ry. Co.*, 9 App. Div. 87; affd., on op. below,

153 N. Y. 670.)   The property in question is of such a character as to be an integral part of the mortgaged property if it was acquired by the Railway Company. It was used as a part of the Ithaca Street Railway system. The question is whether the Ithaca Street Railway Company acquired the property or whether it merely operated it.   A substitution clause in the mortgage subjects all new appliances and property such as cars, generators, etc., to the lien of the mortgage.   It has no application here.   Prior liens on after-acquired property are protected but no prior liens are in controversy in this case.

Appellants' point that the after-acquired property clauses operate only on property acquired within the capacity of the corporation at the time the mortgages were made and do not cover extensions afterwards authorized, has no force.   The extensions were authorized when made or were subsequently validated, including all liens thereon.   (L. 1893, ch. 679.)   So as to the point that these clauses do not spread to property acquired by merger.   The Loop, the Cayuga Lake and the Cayuga Heights property, all minor extensions of the main line, were acquired by the Ithaca Street Railway Company as part of its local system and so became subject to the mortgages.   It took actual possession of them and operated them as a physical and visible part of its road. The Ithaca Traction Corporation took these properties as a part of the Ithaca Street Railway system.   It has no prior equities therein.   *Metropolitan Trust Co.* v. *Chicago & E. I. R. R. Co.* (253 Fed. Rep. 868) has to do with complicated consolidations and has no application here.

More difficulty arises out of the judgment so far as it subjects to the lien of the underlying mortgages a contract for purchase of power and $99,050 in cash.   This is the most important matter in dispute.   Does the mortgage attach to the power facilities possessed by the Ithaca Street Railway Company when the Traction Corporation acquired its property?   Clearly such power facilities,

whatever they may have been, were purchased by the Traction Corporation along with the purchase of the property of the mortgagor as a part of the reorganization scheme. What power facilities of the Ithaca Street Railway Company had become a part of its property at that time?

The Ithaca Street Railway Company had a power plant of its own when the mortgage was given. In 1901 it abandoned it and made a contract with the Remington Salt Company, whereby power was obtained from that plant. This contract was subject to the mortgage because it was a " contract hereafter acquired." Power was furnished to the Railway Company under this contract until 1912, when receivers were appointed. Notice was given by the Remington Company to the Railway Company the day before the receivers were appointed that the contract was canceled for failure to perform, but that power would be furnished at the same terms until further notice, provided payments were made daily and settlement made of the amount in arrears. It is contended that when the receivers took possession there was no contract for power. The contract was, however, modified rather than terminated and power was thereafter furnished under the modified terms to the Ithaca Street Railway Company and its successor.

In May, 1913, the receivers of the New York, Auburn and Lansing Railroad Company, above referred to (also receivers of the Ithaca Street Railway Company), took a lease of the real property of the Remington Salt Company for 999 years and a bill of sale of the machinery and appliances. The power plant was, according to the original plan of reorganization, to be vested in the steam railroad company but the Public Service Commission insisted that the new street railroad should have its own power plant. As a result this property was transferred to the Ithaca Traction Corporation, not wholly, it would seem, as an independent source of power to the new com-

pany, but as including the source of power of the Ithaca Street Railway Company. It has been held that the power contract and the cash received represent the original power house of the railway which was, of course, subject to the lien of the mortgage; that thus became, under the terms of the underlying mortgages, after-acquired property of the Railway Company, subject to the first and second mortgages; and that the receivers acted as a conduit to carry the power plant title over to the Traction Corporation, the successor of the Ithaca Street Railway Company. Obviously the receivers could not carry over to the Traction Corporation any interest of the Railway Company in the power plant that the Railway Company had not then acquired. The plant was purchased out of the proceeds of receivers' certificates which were subsequently paid off out of the proceeds of the sale of bonds of the Central New York Southern Railroad Corporation, which was secured by the pledge of bonds of the Ithaca Traction Corporation. Yet it is held that the Traction Corporation's title to the plant was acquired solely as a substituted source of power to operate the Railway Company whose properties it acquired.

This is an erroneous conclusion.

The property of the Ithaca Street Railway Company was operated as a part of the Traction Corporation's system with power furnished by the plant until the year 1921, when the Remington Salt Company sold the reversion and the Traction Corporation sold its lease and the personal property to the Tompkins County Power Corporation. The Traction Corporation received for its interest $100,000 in notes of the Power Corporation and a long term contract for power. The notes were deposited as additional security for the Traction Corporation mortgage. Ultimately the plant was transferred to New York State Gas and Electric Corporation, which satisfied the notes by paying $99,050 in cash. The lien

[248 N. Y. 322]          Opinion, per POUND, J.          [May,

of the mortgage has been held to cover the lease and the bill of sale and, therefore, the power contract and the cash accepted as a substitute for property sold. The right of the Railway Company to take power from the Remington Company itself was destroyed by the lease and subsequent sale of the plant but the right to receive power from the plant was not thereby destroyed. It must be remembered that this controversy arises out of a reorganization. The Traction Corporation took over the Railway Company as a going concern. The question is what was the property of the Ithaca Street Railway? Was it a company without a source of power? Clearly not. It had an existing contract right to take power from the Remington plant which the ·Traction Corporation could not acquire independently of the right of the Railway Company.

The referee states in his opinion that the general language of the old mortgages is sufficient to cover power as operating property. He does not mention the $99,050 cash. In his report, however, which the judgment follows, he concludes that the lease and the bill of sale were subject to the old mortgages and that all the proceeds are subject thereto. He has gone too far. The Ithaca Street Railway never owned the power plant, or the lease or the bill of sale. It merely had a contract for power to be supplied from that source. The sale of the plant was subject to that contract. The cash does not represent impairment of security or loss of power facilities. It represents a new investment, not operating power. Even if it were cash of the Ithaca Street Railway Company it would not be covered by the mortgage. The purchaser on the foreclosure sale gets a street railway system with power facilities under the contract with the Power Company. It is proper to impress the power contract of the Ithaca Traction Corporation with the lien of the mortgage but not to impress therewith the lease and bill of sale and the proceeds thereof as such.

The judgment of the Appellate Division and that of the trial court should be modified by striking therefrom the provision that defendants-appellants pay to the receiver herein the sum of $99,050, the proceeds of the sale of the power house, and as so modified affirmed, without costs.

CARDOZO, Ch. J., CRANE, ANDREWS, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Judgment accordingly.