VILLAGE OF STILLWATER, Respondent, *v.* HUDSON VALLEY RAILWAY COMPANY et al., Appellants.

(Argued October 23, 1930; decided January 6, 1931.)

*Charles E. Hughes, Jr., William W. Owens, Francis C. Reed, James McPhillips* and *C. E. Fitzgerald* for appellants. The rails and ties of defendant railway in the village of Stillwater do not constitute a trespass or nuisance on account of which the plaintiff is entitled to judgment compelling their removal and the restoration of the pavement so as to correspond with the rest of the street. (*Chicago* v. *Sheldon,* 9 Wall. 50; *City of New York* v. *Dry Dock, E. B. & B. R. R. Co.,* 135 Misc. Rep. 678; 225 App. Div. 794; 251 N. Y. 583; *City of New York* v. *New York City Ry. Co.,* 132 App. Div. 156; *City of New York* v. *Montague,* 145 App. Div. 172; *Boyd* v. *Boyd,* 252 N. Y. 422; *York Mortgage Corp.* v. *Clotar Construction Corp.,* 254 N. Y. 128; *Griffin* v. *Mayor,* 9 N. Y. 456; *Davis* v. *Mayor,* 14 N. Y. 506; *People* v. *Kerr,* 27 N. Y. 188; *Peck* v. *Schenectady Ry. Co.,* 170 N. Y. 298; *Village of Hempstead* v. *Ball Electric Co.,* 9 App. Div. 48; *City of New York* v. *Rice,* 198 N. Y. 124; *Village of Oxford* v. *Willoughby,* 181 N. Y. 155; *Detroit United Railway* v. *City of Detroit,* 172 Mich. 136; 229 U. S. 39; *City of Mt. Vernon* v. *Berman & Reed,* 100 Ohio St. 1; *City of Buffalo* v. *International Ry. Co.,* 135 Misc. Rep. 504; *People* v. *Bleecker Street & Fulton Ferry R. Co.,* 67 Misc. Rep. 577; 140 App. Div. 611; 201 N. Y. 594; *City of New York* v. *Bryan,* 196 N. Y. 158; *New York Central & H. R. R. R. Co.* v. *City of New York,* 202 N. Y. 212; *Beekman* v. *Third Avenue R. R. Co.,* 153 N. Y. 144; *Bradley* v. *Degnon Construction Co.,* 80 Misc. Rep. 90.) Even if the plaintiff is entitled to the removal of the tracks and ties and the repavement of the street, the cost of such work does not

constitute a lien upon all the property of the defendant railway company prior to the lien of the trust mortgage. (*Ithaca Trust Co.* v. *Ithaca Traction Corp.*, 248 N. Y. 322; *Platt* v. *New York & Sea Beach Ry. Co.*, 9 App. Div. 87; 153 N. Y. 670; *Pintsch Compressing Co.* v. *Buffalo Gas Co.*, 280 Fed. Rep. 830; *Farmers' L. & T. Co.* v. *Bankers & Merchants Tel. Co.*, 148 N. Y. 315; *Guarantee Trust Co.* v. *Philadelphia, R. & N. E. R. R. Co.*, 31 App. Div. 511; *Westinghouse Electric Mfg. Co.* v. *Barre & Montpelier, etc., Co.*, 98 Vt. 130; *Flint* v. *Danbury Street Ry. Co.*, 101 Conn. 13; *City of Denver* v. *Stenger*, 295 Fed. Rep. 809; *Provisional Municipality of Pensacola* v. *Northrup*, 66 Fed. Rep. 689; *Boisot* v. *Faller*, 249 Fed. Rep. 193; *Boisot* v. *Amarillo Street Ry. Co.*, 244 Fed. Rep. 838; *Marshall* v. *New York*, 254 U. S. 380; *Wise* v. *Wise Co.*, 153 N. Y. 507; *Matter of Carnegie Trust Co.*, 206 N. Y. 390; *United States* v. *Hool*, 3 Cranch, 73; *Conard* v. *Atlantic Ins. Co.*, 1 Pet. 386; *Field* v. *United States*, 9 Pet. 182; *Brent* v. *Bank of Washington*, 10 Pet. 596.)

*Robert Frazier* and *Sidney W. Hewitt* for respondent. A street railway corporation upon discontinuing its railway operations in a public highway, may be compelled to remove its unused property from the highway, since unused rails and poles are a nuisance in the street. (*City of New York* v. *Montague*, 145 App. Div. 172; *Village of Hempstead* v. *Ball Electric Light Co.*, 9 App. Div. 48; *Transit Commission* v. *Long Island R. R. Co.*, 253 N. Y. 345; *Detroit United Ry. Co.* v. *Detroit*, 229 U. S. 39; *City of Buffalo* v. *International Ry. Co.*, 135 Misc. Rep. 497; *City of Mount Vernon* v. *Berman & Reed*, 100 Ohio St. 1.) An action by a village to compel a railway company to remove its rails, ties and poles which are a nuisance in the street, is not an action for the forfeiture of a franchise, which must be maintained by the people of the State, nor does the fact that the franchise was given by plaintiff to defendant to maintain and operate a street railway

constitute a bar to the action. (*Village of Hempstead* v. *Ball Electric Light Co.*, 9 App. Div. 49; *City of New York* v. *Rice*, 198 N. Y. 124; *City of New York* v. *Montague*, 145 App. Div. 172; *People* v. *Tax Commrs.*, 174 N. Y. 417; *City of New York* v. *Bryan*, 196 N. Y. 158.) The expense of removing the poles, rails and ties of the defendant railway company and restoration of the pavement is an equitable lien or claim upon the property of said railway company prior to the lien of the trust mortgage. (*Southern Ry. Co.* v. *Carnegie Steel Co.*, 176 U. S. 257; *Hale* v. *Frost*, 99 U. S. 389; *Fosdick* v. *Schall*, 99 U. S. 235; *Mittenberger* v. *Railroad*, 106 U. S. 286; *Burham* v. *Bowen*, 11 U. S. 776; *Union Trust* v. *Illinois M. R. Co.*, 117 U. S. 43; *Guaranty Trust Co.* v. *Philadelphia, R. & M. E. R. Co.*, 31 App. Div. 512; *Boisot* v. *Faller*, 249 Fed. Rep. 193; *Penescola* v. *Northrup*, 66 Fed. Rep. 689.)

*John A. Slade* for City of Saratoga Springs, *amicus curiæ*. The mortgaged property is chargeable with the cost of removing the tracks, poles, etc., from the streets. (*City of Mt. Vernon* v. *Berman & Reed*, 100 Ohio St. 9.)

CRANE, J. The village of Stillwater brought this proceeding to get rid of abandoned street railroad tracks on its principal thoroughfare, and to make the cost of their removal a preferred lien on the corporate property.

The Board of Trustees of the village of Stillwater, on December 6, 1882, and on June 15, 1893, by resolution authorized, allowed and permitted the Stillwater and Mechanicville Street Railway Company " to construct, maintain and operate a street railroad through and upon said Main Street " of said village. The consent, taking the form of a contract, by the acceptance and written approval of the railroad, provided for the nature of the roadbed, the grade of the street and the gauge of the road, and stated: " Said roadbed shall at all times be constructed, operated and maintained in such manner, as not

to impair the use of the streets through which it runs." The resolution of June 15, 1893, in similar form contained the further provision that the said company shall keep, maintain and operate its road according to the provisions contained in the laws of the State of New York, and especially those contained in the Railroad Law of 1892.

On May 3, 1899, the Board of Trustees of the village passed a resolution authorizing the Greenwich and Schuylerville Electric Railroad to construct, maintain and operate and use its railroad together with necessary sidings and switches upon and along Main street to connect with the tracks of the Stillwater and Mechanicville Street Railway Company. This resolution was in similar form to the others, and contained the provision that the road shall at all times be kept and operated in compliance with the laws of the State of New York. These resolutions, or consents, were given pursuant to the provision of the State Constitution, article III, section 18, that no law shall authorize the construction or operation of a street railroad except upon the condition. that the consent of the local authorities be first obtained. The authorized practice has been for the local authorities to annex certain conditions to the giving of their consents. (*Matter of Quinby* v. *Public Service Commission*, 223 N. Y. 244, 259, and cases cited.) The three resolutions or consents giving to the two railroads the right to construct tracks in Main street were conditioned upon the maintenance and use of them in the operation of a street surface railroad. The tracks were to be used, and street surface cars were to be operated over them. This is the clear intent and meaning of these resolutions, although the words " on condition " were not always used.

Thereafter, the Stillwater and Mechanicville Street Railway Company and the Greenwich and Schuylerville Electric Railroad constructed and operated, as contemplated and intended by the village consent, an electric street railway on Main street, until July 1, 1901, when

they were consolidated into the defendant, the Hudson Valley Railway Company. Operations were continued until December 1, 1928, when, pursuant to a resolution of its stockholders, the Hudson Valley Railway Company discontinued all its railway operations, which have not since been resumed. It sold all of its feed, trolley and span wires and poles on Main street, and they have been partly removed by the vendee. Fifteen poles only remain standing. The company has also sold its rails extending out of the village to other townships, exclusive of rails in paved streets, and has either dismantled, burned or sold all of its cars. The village now asks to have the remaining tracks and rotting ties — unused, unrepaired — removed from its streets. The Appellate Division, upon ample evidence, has found that the Hudson Valley Railway Company in the year 1926 abandoned and ceased to operate its line from the city of Mechanicville to the village of Ballston Spa, and has since at various times abandoned and discontinued the operation of various portions of its railway system.

Previous to the bringing of this action, the village had demanded of the railroad that it fix and repair the street and highway in accordance with the provisions of the Railroad Law (Cons. Laws, ch. 49), or wholly remove its rails. The company has failed and refused to repair its roadway or remove its tracks and restore the street to its previous condition.

The Hudson Valley Railway Company having abandoned its railroad, given up the operation of its surface cars by a formal resolution, and having sold and disposed of all its equipment, has deliberately failed and refused for over a year and a half to meet the terms and conditions upon which the consent to the use of Main street was given. The action of the village is sufficient indication that it has now withdrawn that consent; in fact, the abandonment of all its operations and property by the railroad company under the conditions of this case has terminated

its rights in the street. In *New York Electric Lines Co. v. Empire City Subway Co.* (235 U. S. 179, at p. 194) Mr. Justice HUGHES, writing the opinion, said: " It is a tacit condition annexed to grants of franchises that they may be lost by mis-user or non-user. *Terrett* v. *Taylor,* 9 Cranch, 43, 51; *Chicago Life Ins. Co.* v. *Needles,* 113 U. S. 574, 580; *Given* v. *Wright,* 117 U. S. 648, 656. The condition thus implied is, of course, a condition subsequent. The same principle is applicable when a municipality under legislative authority gives the permission which brings the franchise into being; there is necessarily implied the condition of user. The conception of the permission as giving rise to a right of property in no way involves the notion that the exercise of the franchise may be held in abeyance for an indefinite time, and that the right may thus be treated as a permanent lien upon the public streets, to be enforced for the advantage of the owner at any time, however distant. Although the franchise is property, ' it is subject to defeasance or forfeiture by failure to exercise it (*People* v. *Broadway R. R. Co. of Brooklyn,* 126 N. Y. 29), or by subsequent abandonment after it has been exercised (*People* v. *Albany & Vermont R. R. Co.,* 24 N. Y. 261).' If ' no time is prescribed, the franchise must be exercised within a reasonable time.' *City of New York* v. *Bryan,* 196 N. Y. 158, 164."

In *New York Electric Lines Co.* v. *Gaynor* (218 N. Y. 417) this court said regarding permission granted by the city of New York to use its streets: " The failure to exercise the permission as contemplated is ground for the revocation or withdrawal of it. It was a tacit condition annexed to the permission as granted that it might be lost by mis-user or non-user." (See, also, *City of Detroit* v. *Detroit United Railway,* 172 Mich. 136; 229 U. S. 39; *City of Mt. Vernon* v. *Berman & Reed,* 100 Ohio St. 1.)

The secondary franchise, which in these cases is the consent or permission given by local authorities for the

use of its streets or highways, is not the franchise by and under which the corporation exists and has the right to function as a corporate being. To destroy or take away this latter franchise it may be necessary to resort to an action by the people of the State through the Attorney-General. (*Matter of Brooklyn Elevated R. R. Co.*, 125 N. Y. 434, 440.) Cases which refer to the corporate franchise as being one grant from the sovereign State have reference to property interests which survive the dissolution of the corporation itself. (*People v. O'Brien*, 111 N. Y. 1; *City of New York v. Bryan*, 196 N. Y. 158.) This is not such a case, as we are dealing here with the consent of a village granted to the Hudson Valley Railway Company to use its streets upon terms and conditions which it now fails and refuses to meet. The consent is at an end, and the tracks of the railroad company in the street are there without authority, and constitute a trespass or a public nuisance. They must be taken up. (*City of Detroit v. Detroit United Railway*, 172 Mich. 136; 229 U. S. 39; *City of Mt. Vernon v. Berman & Reed*, 100 Ohio St. 1; *People ex rel. Metropolitan Street Ry. Co. v. Tax Commissioners*, 174 N. Y. 417; *Transit Commission v. Long Island R. R. Co.*, 253 N. Y. 345; *Village of Hempstead v. Ball Electric Co.*, 9 App. Div. 48.)

With this conclusion counsel for the appellant does not seriously differ. The main contention, we gather, is over the second point in the case — the right to charge the expense of the removal of these tracks to the bondholders under the trust mortgage.

On the 1st day of July, 1901, the defendant railway executed a trust mortgage to the Merchants Trust Company as trustee, covering all its real and personal property, including after-acquired property, to secure an issue of not exceeding $4,000,000 of its bonds. The defendant Bankers Trust Company succeeded to this trust on October 26, 1905, and has since acted as successor trustee under the consolidated mortgage and under subsequent

supplementary mortgages, dated January 16, 1914, and April 10, 1916, covering certain additional property. Bonds to the amount of $3,518,000 were issued and are now outstanding in the hands of *bona fide* holders for value. The railway was never operated at a profit and never paid a dividend. Since 1923 its operating revenues have not been sufficient to pay its actual operating expenses and taxes, exclusive of interest on its funded and unfunded debt. The defendant railway is insolvent and its property is insufficient to pay the amount due on its outstanding consolidated mortgage bonds, with interest, exclusive of its substantial unsecured liabilities. Foreclosure of the trust mortgage for non-payment of interest was begun on April 3, 1929.

The judgment directed to be entered by the Appellate Division requires the Hudson Valley Railway Company to remove its rails, ties and poles on Main street in the village of Stillwater, and, in the event of its failure so to do, the village is authorized to remove the property and restore the surface of the street to correspond to the remaining portion thereof. The expense of removing the rails, ties and poles and span wires and restoring of the brick pavement is to be an equitable lien upon the property of the defendant, the Hudson Valley Railway Company, in the hands of the Bankers Trust Company, prior to the lien of the trust mortgage and the mortgages supplemental thereto. " The principle involved," said the Appellate Division, " is akin to that which fixes a prior lien to the mortgage upon the insolvent estate to pay current debts." (229 App. Div. 41, 44.) That principle, in our judgment, cannot be extended to the facts of this case.

" The current debt fund " rule is that creditors who have supplied labor, materials or equipment essential to the operation of a railroad before an adjudication of insolvency will be entitled to a lien upon the railroad properties prior to the lien of pre-existing mortgages, if

they can show that current operating revenues have been diverted to the payment of principal or interest on the mortgages, or to the enhancement of the mortgage security before current operating expenses have been met. In *Southern Railway Co.* v. *Carnegie Steel Co.* (176 U. S. 257, 285) the court summed up the decisions upon the subject in saying: " This court has uniformly refrained from laying down any rule as absolutely controlling in every case involving the right of unsecured creditors of a corporation, whose property is in the hands of a receiver, to have their demands paid out of net earnings in preference to mortgage creditors. But it may be safely affirmed, upon the authority of former decisions, that a railroad mortgagee when accepting his security impliedly agrees that the current debts of a railroad company contracted in the ordinary course of its business shall be paid out of current receipts before he has any claim upon such income; that, within this rule, a debt not contracted upon the personal credit of the company but to keep the railroad itself in condition to be used with reasonable safety for the transportation of persons and property, and with the expectation of the parties that it was to be met out of the current receipts of the company, may be treated as a current debt; that whether the debt was contracted upon the personal credit of the company, without any reference to its receipts, is to be determined in each case by the amount of the debt, the time and terms of payment, and all other circumstances attending the transaction; and that when current earnings are used for the benefit of mortgage creditors before current expenses are paid, the mortgage security is chargeable in equity with the restoration of any funds thus improperly diverted from their primary use." As to time limitation usually six months, see *St. Louis & S. F. R. R. Co.* v. *Spiller* (274 U. S. 304, 311). (See, also, a denial of a preference in *Lackawanna Iron & Coal Co.* v. *Farmers' L. & T. Co.,* 176 U. S. 298.)

The same underlying principle applies to the preference sometimes given to receivers' certificates issued for money or supplies to keep a railroad going. (*Knickerbocker Trust Co.* v. *Oneonta, C. & R. S. Ry. Co.*, 201 N. Y. 379; *Central Trust Co.* v. *Pittsburg, S. & N. R. R. Co.*, 223 N. Y. 347.) These instances of preference are exceptions to the general rule that a secured prior lien is paramount to the claims of all other creditors, and as such, are strictly limited to the necessities of the situation and the preservation of the *res.* " The right of a creditor of an insolvent corporation in the hands of a receiver to have a preference over bondholders under a first mortgage is *strictissimi juris.*" (*Farmers' L. & T. Co.* v. *Bankers & Merchants Tel. Co.*, 148 N. Y. 315, 323; *Lackawanna Iron & Coal Co.* v. *Farmers' L. & T. Co.*, 176 U. S. 298.)

The underlying thought in this preference rule is that for the sake of the public the railroad or public utility must be kept in operation and maintained as a going concern. (*Matter of Cornell Co.*, 201 Fed. Rep. 381, 388.) This is also, in most instances, beneficial to the mortgagee. Money and supplies are necessary to accomplish this purpose, and to procure them or to obtain credit, the sum or value advanced is given a preference under what is termed the " current debt fund " rule. " Like supplies advanced or repairs made to a vessel, they had been actually necessary to preserve the existence of the *res* itself, upon the existence of which *res* all other liens depended." (*Central Bank & Trust Corp.* v. *Cleveland*, 252 Fed. Rep. 530.)

The expenses that may be incurred by the village of Stillwater in removing the tracks and property of the railway in Main street are for a purpose quite the contrary to that of this preference rule. The money is not to be expended for the benefit of the railroad or of the mortgagee, but for the benefit of the village; not to keep the railroad in operation, but to accomplish its final removal; not to facilitate transportation by rail, but

to clear the streets of a nuisance. Priority cannot be given over the trust mortgage for such claims. (*Westinghouse Elec. Mfg. Co.* v. *Barre & Montpelier Traction & Power Co.*, 98 Vt. 130; *Provisional Municipality of Pensacola* v. *Northrup*, 66 Fed. Rep. 689; *Toledo, D. & R. R. R. Co.* v. *Hamilton*, 134 U. S. 296.)

The mortgage in this case covers all the property of the railway of every description including after-acquired property, and consequently covers the cash proceeds from the sale of any of the mortgaged property. (*Ithaca Trust Co.* v. *Ithaca Traction Corp.*, 248 N. Y. 322.)

The judgment obtained against the railroad by the village for the expense of removing the tracks and restoring the street is not, therefore, to be given a preference over the mortgage or secured bondholders, but will be of the same nature and force as any other judgment recovered for debt, or for tort.

That part of the judgment appealed from which gives a preference to the village of Stillwater for the expense of removing the tracks in Main street is reversed and stricken from the judgment.

The judgment should be modified as directed in the opinion and as modified affirmed, without costs.

CARDOZO, Ch. J., POUND, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment accordingly.