In re MADISON RYS. CO.

CITY OF MADISON v. MADISON RYS. CO

No. 7231.

Circuit Court of Appeals, Seventh Circuit.

Oct. 28, 1940.

Harold E. Hanson, of Madison, Wis., for appellant.

Wm. Ryan and R. J. Sutherland, both of Madison, Wis., for appellee.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

SPARKS, Circuit Judge.

This appeal is from an order confirming a plan for reorganization of the Madison Railways Company under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. The present controversy arose out of the classification of the city's claim against the company. The validity of that claim as such was previously adjudicated by the bankruptcy court, and that order was affirmed by this court on March 9, 1939. 7 Cir., 102 F.2d 178. The facts relating thereto are fully set forth in that opinion, and it will be unnecessary to repeat many of them here.

The claim which was in two parts was filed September 30, 1936, and we are here interested only in certain portions of it. It was stated in the claim that all parts of it were filed as a first preferred claim, superior to any and all other claims against the debtor, whether secured or not. The order from which the former appeal was taken allowed a liquidated claim of $9,417.80. The second part of the claim was for the unliquidated amount of $224,-000, which represented the estimated cost of the removal of debtor's tracks and repaving of the track zone. This work had not been done and it was not certain that the city would ever do it, or any part of it, and accordingly the bankruptcy court disallowed that part of the claim, but reserved to the city its right to recover from the debtor the reasonable expense it might incur if and when it might remove the debtor's remaining tracks from its streets. Nothing appeared in that order with respect to the classification of these claims, as to whether either or both were general or preferred, and nothing was urged in this court on the former appeal as to their classification. We affirmed the order of the District Court.

Subsequent to that ruling, a motion was made to the District Court to confirm the plan which had been offered. This motion was heard on October 24, 1939, at which time the city and the Public Service Commission of Wisconsin appeared by their attorneys. The city filed its non-acceptance of the plan, assigning no reasons therefor. At this hearing proofs were offered as to the value of the assets of the company, which constituted the security for the first mortgage bonds. The city did not contest the testimony as to values, and the court found that the bonded indebtedness exceeded the value of the security underlying the same by the amount of $678,593.78. An adjourned hearing on the matter was had on November 28, 1935, at which the court confirmed the plan. The city did not appear, and the Public Service Commission, though appearing, made no objection thereto.

The confirmation order, based upon a special finding of facts, classified the claims as: First, bondholders'; second, preferred stockholders'; and third, general creditors' (including appellant's). It also determined that the amount of the excess of bonded indebtedness over and above the security underlying same should be classified with general creditors' claims. The order further provided in respect to the city's claims:

"* * * that the claim of the City of Madison, liquidated in the sum of $9,417.80 and heretofore allowed by the Court herein, be treated and classified as a general creditor's claim; that the unliquidated claim of the City of Madison for future cost of track removal be allowed to participate in the distribution of stock as a general creditor's claim; that the unliquidated claim of the City of Madison for future cost of track removal be allowed to participate in the distribution of stock as a general creditor's claim, if and when the amount of said claim may be determined and liquidated in whole, or in part, from time to time, in accordance with the opinion of the Circuit Court of Appeals herein * * *"

The city contends that the plan is unfair, inequitable and unlawful; that it does not provide for the city's unliquidated claim as directed by this court's former ruling; and that the city's liquidated claim was entitled to priority.

■ It is first urged that it was unfair and unlawful to classify the excess of the bonded indebtedness over the value of the security, as a general claim. There is no merit in this contention.

■ It is further urged by the city that the plan was unfair in that all the general creditors, except the city, were paid in full in cash as their claims matured. The item of bills payable, which appellant claims was given preferential treatment, was principally the current payroll immediately preceding the filing of the petition, and current bills incurred in its operation of its motor bus transportation system. The payment of such bills in this manner was fully authorized under the ruling of Village of Stillwater v. Hudson Valley Railway Company, 255 N.Y. 144, 174 N.E. 306, and analogous cases. No part of the city's claim represented a current operating expense. Its payment was not necessary to the maintenance of the debtor's business, for at the time the city's services were performed, which constituted the basis for the liquidated claim, the debtor was not engaged in the street railway business at all. We think there was no error in this ruling.

■ It is next urged by the city that the plan is erroneous and unlawful in that it compels the city to receive and hold stock in a private corporation, that is to say it compels it to take stock in the reorganized company in return for the expense the city might incur in the future for removing the debtor's tracks from its streets. We think there is no doubt that the creditor who under the law is not permitted to hold certain types of property, may, nevertheless, take such property in payment of a debt and afterwards realize upon it. The mere fact that the property taken was at the time of very little or no value, would not invalidate the plan, and we think it would not prevent the owner from holding it in anticipation of an improved market for that particular property. We think the rule applicable here is analogous to that applied to banks which are not permitted to hold real estate, yet they are authorized, as an aid in the collection of a debt, to hold the legal title for a reasonable time, and if such time is unreasonable and uncertain they may appoint trustees to hold the legal title for them, to aid them in the collection of the debt. Zantzinger v. Gunton, 19 Wall. 32, 86 U.S. 32, 22 L.Ed. 96. We think appellant's contention in this respect is not tenable.

It is further urged by the city that its unliquidated claim was not provided for by the plan in the manner directed by this court. It has not been pointed out to us wherein any difference lies. We hold that the plan adopted substantially complies with our ruling in this respect.

■ It is finally urged by the city that its liquidated claim was entitled to priority. At this point we are confronted with appellee's contention that the city's claim to priority was not litigated in the proceedings from which this appeal is taken, and is not entitled to consideration in this court. It is quite true that this contention was given but very slight consideration by the city at the trial. However, the claim asked for priority, and in the order of classification, the court, without mentioning the claim of priority, allowed the liquidated claim as a general one. It is quite true that this claim had previously been allowed without stating whether it was a preferential one or otherwise. However, we think it was not necessary at that time for the court to pass upon the question of priority, and it would seem to be a very harsh rule that would preclude the claimant from afterwards insisting upon priority at the time of the classification of the claims.

It is quite true that at the time of the classification the city did not specifically refer to the question of its priority, but its request was incorporated in its claim, and the court allowed the claim as a general one. Under these circumstances, we think it cannot be said that the question was not timely presented to the District Court. Again, it is quite true that the assignment of errors does not specifically mention the failure to allow the claim as a preferential one. Good practice should have suggested otherwise. However, the assignment of errors does very broadly state that the plan is unfair and inequitable, and under the particular facts here presented we think the assignment is sufficient to cover the contention now urged. We so hold because the question was clearly raised and the court was not misled in any way. The order plainly passed on the question adversely to the city's contention, and we are convinced that the court based that order upon the merits rather than upon the former adjudication. We are not reluctant to make this assump-

tion because we think the ruling was correct on the merits.

■■ We are convinced that the City of Madison had no right to any preference, priority or lien upon its claim against the debtor. It is argued by the city, however, that it is entitled to special classification as a creditor because it is charged by statute with the duty of maintaining its streets. We think this position is not tenable. The city's liquidated claim was allowed, and its right to later consideration on its unliquidated claim was preserved upon common law principles. It is oftentimes true that statutes, ordinances, charters, and franchises require persons who use the streets for such purposes as railways, crossings, drains, and the like, to restore portions so used, and keep them in repair during such use. Such statutes, however, have been held to be merely declaratory of the common law. Maltby v. Chicago & W. Mich. Ry. Co., 52 Mich. 108, 17 N.W. 717; City of Zanesville v. Fannan, 53 Ohio St. 605, 42 N.E. 703, 53 Am.St.Rep. 664; People ex rel. Bloomington v. Chicago & Alton Ry. Co., 67 Ill. 118.

Whether the city was entitled to relief at law or in equity, we find no Wisconsin case holding that its claim to such relief, under such circumstances as here presented, was entitled to priority over claims of secured creditors, nor does appellant call our attention to any such. It relies quite strongly upon the case, Philadelphia Co. v. Beaver Valley Traction Co., decided in June 1937, in which the Court of Common Pleas of Beaver County, Pennsylvania, permitted the receiver of an insolvent traction company to expend part of the funds then in his hands for repair of highways over which the company had rights of way and tracks in a very bad state of repair. It appeared that the receiver was seeking a certificate of dissolution for the operation of street car lines, and a franchise to operate a bus transportation system, both of which could be withheld by the state authorities. The case is not authority for a ruling of priority in the case at bar. More nearly in point is the case, Village of Stillwater v. Hudson Valley Ry. Co., 255 N.Y. 144, 174 N.E. 306. There it was held that after abandonment of the operation of the railway there involved as a going concern, a judgment obtained by the village for expenditures in the removal of tracks was not entitled to priority over

mortgage bondholders. See, also, Westinghouse Electric Mfg. Co. v. Barre & Montpelier Co., 98 Vt. 130, 126 A. 594; Provisional Municipality of Pensacola v. Northrup, 5 Cir., 66 F. 689, both of which uphold the priority of rights of mortgage bondholders over claims for paving.

Order affirmed.