In the Matter of HALLMARK MEDICAL SERVICES, INC., et al., Debtors.

Isaac MIZRAHI et al., Appellants,

v.

William H. MARTIN, Trustee, Appellee.

No. 72-2440.

United States Court of Appeals, Fifth Circuit.

March 15, 1973.

Rehearing and Rehearing En Banc Denied May 18, 1973.

Charles L. Neustein, Miami, Fla., for Heiman and Crary.

Marvin E. Barkin, Tampa, Fla., W. K. Zewadski, St. Petersburg, Fla., for trustee.

Preston O. Cockey, Jr., Leonard H. Gilbert, Tampa, Fla., for debenture holders.

Before WISDOM, BELL and COLEMAN, Circuit Judges.

WISDOM, Circuit Judge:

In this case a group of unsecured creditors in a Chapter X bankruptcy seeks priority ranking under the so-called "six months rule." The appellant-creditors contend that this rule allows priority to all creditors who furnish credit to a corporate debtor within six months before the appointment of a trustee if such credit is necessary to the continued operation of the debtor. The district court, adopting the recommendations of a special master, disallowed the claim of priority of the six months creditors. Because the district court held as a matter of law that no six months class could exist in this case, the creditors here appealing offered no evidence as to what money or services they rendered to the debtor corporation. We hold that the six months rule may apply to Chapter X reorganizations of quasi-public corporations.[1] We remand for a determination whether under principles of equity these creditors qualify for priority classification under that rule.

## I.

Hallmark Medical Services, Inc., built, operated, and sold nursing homes for profit. It operated six nursing homes in

---

1. Because of reasons stated in this opinion we do not reach the question whether the six months rule applies to purely private corporations.

Florida with beds for 472 patients and also owned several homes under construction which when completed would have a capacity for 620 patients. Hallmark also owned a hospital in Largo, Florida.

On August 7, 1970, the holders of four million dollars of unsecured debentures filed a petition for involuntary corporate reorganization under Chapter X of the Bankruptcy Act. On December 21, 1970, the petition for reorganization was granted and a trustee was appointed. Proofs of Claim were filed and a ranking of creditors was established. Several unsecured creditors argued that they were entitled to priority for having extended credit to the corporation within the six month period before the appointment of a trustee.[2] The district court ruled that Hallmark was a purely private corporation and that the six months rule did not apply to the reorganization of private corporations. The court denied the creditors' claims for priority. That conclusion was reached without receipt of any evidence or testimony at the hearing of October 28, 1971, or at the hearing of March 15, 1972. All parties have stipulated that the sole issue on appeal is the applicability of the six months rule to a reorganization under Chapter X of the Bankruptcy Act. No questions of fact are before us.

## II.

■ The function of the six months rule is to encourage the extension of credit to corporations delivering important public services at a time when they are financially weak. The end served is to prevent the interruption of services to the public and to preserve the value of the corporate assets for the other creditors. Without the benefit of preferential ranking, unsecured creditors would have no motivation to risk venture capital. The costs of labor, supplies, and repairs necessary for the continued operation of the corporation, or capital to purchase those items, have been treated as expenses of administration when they are provided within six months before the appointment of a trustee.

■ The appellee acknowledges that the rule is applicable to public service corporations but argues that the rule does not necessarily apply to every corporation "affected with the public interest." We conclude that the function, not the characterization, of the corporation and the purpose for the credit are the determining factors.

## III.

The six months rule was judicially created and first applied in railroad reorganizations, Fosdick v. Schall, 1878, 99 U.S. 235, 25 L.Ed. 339.[3] It was eventually extended to other public and quasi-public corporations providing the pub-

---

2. The plan of reorganization called for sale of all of Hallmark's assets for over five million dollars. That amount was sufficient to satisfy the claims of the United States, the claims of state and local governments, and the secured creditors in full, but would provide perhaps as little as 33 cents on the dollar for the unsecured creditors. Both the appellants and the debenture holders were unsecured.

3. In refusing to apply the rule to credit extended for original construction, the Supreme Court stated: "The [Fosdick] case lays great emphasis on the consideration that a railroad is a peculiar property, of a public nature, and discharging a great public work. There is a broad distinction between such a case and that of a purely private concern. We do not undertake to decide the question here, but only to point it out." Wood v. Guarantee Trust & Safe Deposit Co., 1888, 128 U.S. 416, 421, 9 S.Ct. 131, 132, 32 L.Ed. 472, 473. In Wood the Court also emphasized that the credit was not for operating expenses. The six months rule for railroads has been codified at 11 U.S.C. § 205(c). Cf. Johnson Fare Box Co. v. Doyle, 2 Cir. 1958, 250 F.2d 656 where the court refused to equate "new equipment" with operating expenses.

lic with gas, lighting, telephones, irrigation, heating, and transportation.[4]

The application of the rule, however, has not been confined to public service corporations but has also been applied to private corporations under Chapter X of the Bankruptcy Act, 6 Collier on Bankruptcy § 9.13[5] (14th ed.); Remington, Bankruptcy § 4635 (Rev. ed. 1961). Operating expenses such as salaries, supplies, professional services, and workmen's compensation for private corporations have been included within the ambit of the six months rule.[5]

Judge Learned Hand vividly explained the reason for extending the rule to private corporations:

" . . . Just as it is recognized that, after insolvency, the expenses of continued operation of a business may be necessary to preserve its value for the secured creditors themselves, and for that reason that the receiver's creditors have priority, so it may be before insolvency. To take the case at bar, upon the continued operation of a hotel its good will depends; let it once shut down, and it will lose much of its value. Unless the tradesmen with whom it must deal can be protected, as its credit slowly wanes before final insolvency, it must begin to trade upon a cash basis, which may be difficult or even impossible. Some priority to them may be essential to the preservation of the business during that period as it is later. While the interests of the public were no doubt the paramount consideration in the origin of the rule, the interests of the lienors themselves may make equally imperative some protection to supply creditors."

Dudley v. Mealey, 2 Cir. 1945, 147 F.2d 268, 271. *Dudley* concluded that services and supplies provided to a hotel within the six month period were entitled to priority. In other cases where the public interest did not demand continued operation of a business and where there was no substantial class of lien-holders whose interests would have been jeopardized had a corporation ceased operation, creditors were denied the priority of six months status.[6] In

---

4. In re Madison Railways Co., 7 Cir. 1940, 115 F.2d 586; Crane Co. v. Fidelity Trust Co., 9 Cir. 1916, 238 F. 693; Penn. Steel Co. v. New York City Ry. Co., 2 Cir. 1914, 216 F. 458; Louisville and Nashville R.R. Co. v. Memphis Gas Light Co., 6 Cir. 1903, 125 F. 97; Keelyn v. Carolina Mutual Telephone & Telegraph Co., 4 Cir. 1898, 90 F. 29; Reyburn v. Consumers Gas, Fuel, and Light Co., 1887, N.D.Ill., 29 F. 561; 6A Collier on Bankruptcy § 9.13(5) p. 249 (1972).

5. Bowen v. Hockley, 4 Cir. 1934, 71 F.2d 781; Dickinson v. Saunders, 1 Cir. 1904, 129 F. 16; Olyphant v. St. Louis Ore and Steel Co., 1884, E.D.Mo., 22 F. 179; L'Hote v. Boyet, 1905, 85 Miss. 636, 38 So. 1; Drennen v. Mercantile Trust & Dep. Co., 1897, 115 Ala. 592, 23 So. 164.

6. Regardless of equitable considerations, other courts have held that the six month rule cannot in any case apply to a Chapter XI bankruptcy. Priorities in a Chapter XI bankruptcy are determined by § 64 of the Act, 11 U.S.C. § 104 whereas Chapter X priorities are determined by principles of equity under § 115, 11 U.S.C. § 515. There are no statutory priorities under Chapter X.

Section 102, 11 U.S.C. § 502 of the Act expressly excludes § 64 ranking. In re Chicago Express, Inc., 2 Cir. 1964, 332 F.2d 276. In Chapter X a court is empowered to classify creditors, § 197, 11 U.S.C. § 597. We do not here make any ruling with respect to a Chapter XI proceeding. See also Reading Co. v. Brown, 1968, 391 U.S. 471, 485, 88 S.Ct. 1759, 20 L.Ed.2d 751 (Dissenting opinion of Chief Justice Warren).

Another Chapter XI proceeding where the six month rule was rejected is In re Pusey & Jones Corp., 3 Cir. 1961, 295 F.2d 479, affirming, 1961, D.Del., 192 F.Supp. 233, which involved a paper-making machine company. The rationale of *Pusey* was that this corporation did not serve a vital public interest and that the statute did not expressly allow priority. The court stated: "Considered reflection leads to the view the exception of the six months' rule should not be extended to all private corporations." Another case cited by the appellee, but which was decided on the basis of § 64 is In re Warner Coal Corp., 1949, N.D. W.Va., 83 F.Supp. 961, aff'd sub nom. Wheeling Electric Co. v. Mead, 4 Cir. 1949, 177 F.2d 718.

re North Atlantic & Gulf Steamship Co., Inc., 1962, S.D.N.Y., 200 F.Supp. 818, aff'd sub nom., Schilling v. McAllister Bros., Inc., 2 Cir. 1962, 310 F.2d 123; In re Pusey & Jones Corp., 3 Cir. 1961, 295 F.2d 479. Thus the rule is applied restrictively, rather than presumptively. Johnson Fare Box Co. v. Doyle, 2 Cir. 1958, 250 F.2d 656, 657; In re Yale Express System, Inc., 1972, S.D.N.Y., 342 F.Supp. 972.

## IV.

■ In determining whether a corporation is public or quasi-public it is the function, not the character, of the corporate entity which is significant. Here, Hallmark provided services to 472 patients and was constructing facilities for 620 more. As of December 1971, 298 of Hallmark's patients were classified as "Medicaid skilled" which meant that the patient was seriously ill and required skilled nursing care. The revenue produced from those patients was in fact less than the cost of the services provided them.[7] Only 134 of Hallmark's patients were private. The medical expenses of the others were paid by governmental subsidies from various sources including the Division of Family Services of the State of Florida (Medical Assistance for the Needy, Fla.Stat. Ann. 409.266), Medicare (Federal Health Insurance for the Aged, 42 U.S.C. § 1395 et seq.), and Hospital, Domiciliary, and Medical Care for Veterans (38 U.S.C. § 610 et seq.). Furthermore, expert testimony indicated a need for additional nursing homes in central Florida and that the market was underdeveloped.[8] The homes were licensed and regulated by Florida statutes prescribing minimum standards of operation and requiring that inspection be permitted at reasonable times. Fla. Stat.Ann. § 400 et seq. A violation of those state regulations carries criminal penalties. Fla.Stat.Ann. § 400.13.

The closing of these nursing homes would have serious consequences for those under their care. These nursing homes had a direct relation to public health and performed vital public function. It was exigent that these essential therapeutic services would be delivered without interruption.

■ We conclude that Hallmark performed a quasi-public function that brought it within the ambit of the six months rule. In a Chapter X reorganization, though no statutory priorities exist, a trial judge may equitably apply the six months rule to quasi-public corporations where circumstances justify its application. This conclusion is not inconsistent with the Act's policy of classifying all unsecured creditors together because a justification for priority is that an extension of credit has preserved a larger fund for the other creditors.[9] Having concluded that a six months class may exist for quasi-public corporations we remand the case for further proceedings to enable the district court to determine whether these appellants merit inclusion within the rule. We do not express any opinion whether equity weighs in favor or against these appellants or whether they should properly be classified as six months creditors.

Reversed and remanded for further proceedings consistent with this opinion.

---

7. Hallmark received only $11.60 per day for the Medicaid patients and only $18.75 per day for the Medicare patients whereas private patients paid between $20 and $30 per day. A reduction in the number of beds available could tend to displace the welfare patients.

8. Findings of Fact, Referee in Bankruptcy, p. 6, October 27, 1970 (Exhibit Q, #18).

9. Compare the policy of this priority with the high ranking lien for salvage in admiralty. Gilmore and Black, The Law of Admiralty, § 9-20, p. 514 (1957). The rank is granted because of the "benefit conferred in preserving the value of the ship and cargo."